IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 17, 2004

## STATE OF TENNESSEE v. DAVID SEVER WATKINS

Appeal from the Criminal Court for White County
No. CR1172      Leon Burns, Jr., Judge

─────────────

### No. M2003-01488-CCA-R3-CD - Filed February 9, 2005

─────────────

The defendant, David Sever Watkins,[1] was convicted by a White County jury of sale of .5 grams or more of a Schedule II controlled substance, cocaine, and was sentenced as a Range I, standard offender to ten years in the Department of Correction.  On appeal, he asserts: (1) the evidence was insufficient to sustain his conviction; and (2) the trial court erred in imposing a ten-year sentence. Following our review, we affirm the conviction and the sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

David N. Brady, District Public Defender; Joe L. Finley, Jr. and John B. Nisbet, III, Assistant Public Defenders, for the appellant, David Sever Watkins.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; William E. Gibson, District Attorney General; and John A. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

Tennessee Bureau of Investigation ("TBI") Special Agent Dan Ogle testified that on May 22, 2002, while working undercover narcotics in White and Putnam Counties, he went to White County to "purchase crack cocaine from [the defendant]."  After contacting the defendant by cell phone, Agent Ogle met him in the parking lot of a Shell gas station off Highway 111.  The defendant pulled up alongside Agent Ogle's car and asked him if he was in law enforcement.  When Agent Ogle said

─────────────

[1]We note that the correct spelling of the defendant's middle name is "Sevier."  However, we have listed the defendant's name as it appears in the indictment.

"no," the defendant got into Agent Ogle's car and they began discussing drug transactions. Agent Ogle told the defendant that he wanted an "eight ball," which he explained in court was a common term for approximately 3.2 to 3.5 grams of crack cocaine. The defendant told him that he could get an eight ball for $200 and that future buys might be cheaper. The defendant then called his "source," whom he told to meet them at a Chevron gas station. Agent Ogle and the defendant drove to the Chevron, where a black Monte Carlo vehicle occupied by two African-American females pulled up. The defendant got out and approached their vehicle with a set of digital scales he had borrowed from Agent Ogle. After getting into the Monte Carlo and conducting a transaction, the defendant returned to Agent Ogle's vehicle and showed him the crack cocaine. They then returned to the Shell station, where the defendant gave Agent Ogle "the entire chunk of crack cocaine." Agent Ogle had difficulty breaking the rock of cocaine, so the defendant retrieved from his vehicle a screw which they used to break off a chunk of the cocaine. After discussing future drug transactions, the defendant took the remainder of the crack cocaine and left. Agent Ogle stated the entire transaction took a "little over an hour." Agent Ogle then sealed the crack cocaine he had purchased in a plastic bag and gave it to his backup, Agent Danny Espinosa, to take to the crime lab. Agent Espinosa had been in a vehicle "down the road," monitoring the conversations between the defendant and Agent Ogle on a recording device known as a "Kell set."

TBI Agent Danny Espinosa testified that on May 22, 2002, he was employed with the Putnam County Sheriff's Department and was assigned to the Thirteenth Judicial Drug Task Force. On that date, he was working as Agent Ogle's "cover person," following in a separate vehicle and operating the Kell set. Espinosa took the crack cocaine from Agent Ogle and then delivered it to the TBI Crime Lab in Nashville on May 28.

Agent Dianne Smith testified that she had been employed with the TBI Crime Lab for sixteen years and that her job is to "receive evidence from the various law enforcement agencies of the State of Tennessee" for analysis "to determine if it contains a controlled substance." During those sixteen years, she had run "thousands" of tests like the one involved in this case. She analyzed the substance delivered by Agent Espinosa using "ultraviolet spectrophotometry, infrared spectrophotometry, mass spectrophotometry, and . . . gas chromatography" tests. Her analysis revealed that the "rock like substance," which weighed 3.87 grams, was cocaine. On cross-examination, she explained that it was "not standard operating procedure" to perform quantitative analysis to determine if a substance was "pure cocaine." Instead, the results of her tests were "strictly qualitative." She stated that the substance in the instant case "may not have been pure" cocaine. She testified that had she taken a small sample from either end of the rock, it would have tested positive for cocaine. Finally, she stated that the cocaine base in the sample she tested "wasn't 100 percent cocaine but I don't know if it was 80 or 90 because I did not check the purity."

The defendant elected not to testify.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant asserts that because the State did not prove that the controlled substance he sold contained "pure" cocaine of at least .5 grams, the evidence was insufficient to convict him of Class B felony sale of a Schedule II controlled substance pursuant to Tennessee Code Annotated section 39-17-417(c)(1). We disagree.

Where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Our opinion in State v. Howard Kareem Atkins, No. 02C01-9805-CC-00155, 1999 WL 241870 (Tenn. Crim. App. Apr. 26, 1999), is exactly on point and controlling for the issue raised by the defendant:

> The defendant also complains that the indictment charges him with selling cocaine weighing .5 grams or more, but the evidence

established only that he sold a substance containing cocaine weighing .5 grams or more and it was not established how much the pure cocaine weighed. The defendant labels this as a sufficiency of the evidence issue. This is not a sufficiency of the evidence issue because in order to establish a Class B felony under § 39-17-417(c), the State need not prove that the pure cocaine in the contraband substance weighed .5 grams or more, so long as the weight of the cocaine combined with the other substances totaled .5 grams or more. See State v. Alcorn, 741 S.W.2d 135, 138 (Tenn. Crim. App. 1987). Thus, the State proved what § 39-17-417(c)(1) required it to prove, that is, that the substance containing cocaine that was sold by the defendant weighed .5 grams or more.

The defendant's true point of contention is that the indictment is insufficient because it alleges he sold cocaine weighing .5 grams or more, rather than a substance containing cocaine weighing .5 grams or more, as § 39-17-417(c)(1) provides. The indictment, however, complies with constitutional protections, including that of notice to the accused of the crime charged. Moreover, the indictment complies with the requirements delineated in § 40-13-202. Thus, it is sufficient to support the defendant's conviction.

Id. at **1-2. The defendant points to no authority, nor do we know of any, for the proposition that only the weight of the "pure" cocaine in a crack cocaine mixture is relevant to the determination of whether the amount sold was more or less than .5 grams. As pointed out clearly in Howard Kareem Atkins, "the State need not prove that the pure cocaine in the contraband substance weighed .5 grams or more, so long as the weight of the cocaine combined with the other substances totaled .5 grams or more." Id. at *1. The plain language of the statute states that "if the amount involved is point five (.5) grams or more *of any substance containing cocaine*," then the offense is a Class B felony. Tenn. Code Ann. § 39-17-417(c)(1) (emphasis added). Therefore, the defendant's contention is without merit.

Like the defendant in Howard Kareem Atkins, the defendant in the present appeal, at the motion for new trial hearing conducted at the same time as the sentencing hearing, argued that the indictment was insufficient because it only alleged that he sold cocaine, rather than a substance containing cocaine. Having reviewed the indictment in the present case, we conclude that it complies with all the requirements of Title 40, Chapter 13, Part 2 of Tennessee Code Annotated, as well as all other protections guaranteed by the Tennessee Constitution. The defendant was fully put on notice of the crime with which he was charged.

Agent Ogle testified that he bought an "eight ball" rock of crack cocaine from the defendant for $200. Agent Espinosa testified that he delivered the crack cocaine to the TBI Crime Lab. Agent Smith testified that she analyzed the contraband substance, which tested positive as cocaine and

weighed 3.87 grams. Based upon the testimony of these witnesses, we conclude the proof was sufficient to establish the defendant's guilt beyond a reasonable doubt.

## II. Sentencing

The defendant also challenges his ten-year sentence, arguing that the trial court did not give enough weight to mitigating factors and that the sentence is affected by the recent United States Supreme Court decision in Blakely v. Washington, 542 U.S. __, 123 S. Ct. 2531 (2004).[2]

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

The defendant was convicted of sale of .5 grams or more of a Schedule II controlled substance, cocaine, a Class B felony, and was sentenced as a Range I, standard offender. The sentence range for a Class B felony, as a Range I, standard offender is eight to twelve years. Tenn. Code Ann. § 40-35-112(a)(2) (2003). There is no mathematical formula for evaluating the enhancement factors to calculate the appropriate sentence. See generally State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989

---

[2]The Blakely opinion was released while the present appeal was pending before this court and before it had been docketed. The defendant filed with this court a copy of the opinion as supplemental authority, arguing that it affected his sentencing.

Sentencing Act and its findings are adequately supported by the record." Id. at 475-76 (citations omitted).

Jim Wallace, a supervising probation officer with the Department of Probation and Parole, testified at the sentencing hearing that he prepared the defendant's presentence report. He said the defendant was convicted of misdemeanor contributing to the delinquency of a minor in 1995 and felony sale of a Schedule II controlled substance, cocaine, in 1996. In addition, the defendant was on parole when he committed the present offense.

The defendant testified that he completed the Lifeline Therapeutic Community drug program while incarcerated in Hardeman County and that he had been attending Alcoholics Anonymous meetings. He said he was currently working for his father, who trades mules, and for a "Ms. Coffman," who worked at a local carpet business. On cross-examination, the defendant said he was paroled in 1998 on his prior drug conviction, but he violated parole in 2000 and was returned to prison. He was paroled again in 2001, which was revoked due to the current drug arrest in 2002.

Thomas Sevier Watkins, the defendant's father, testified that the defendant had been living with him and performing some mule work since being released from prison. The defendant had not been in any trouble as far as he knew.

At the conclusion of the sentencing hearing, the trial court applied three enhancement factors: (2), the defendant has a previous history of criminal convictions in addition to those necessary to establish the range; (9), the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and (14)(B), the felony was committed while on any of the following forms of release status if such release is from a prior felony conviction: parole. See Tenn. Code Ann. § 40-35-114(2), (9), (14) (2003). The court also found one mitigating factor, (1) the defendant's criminal conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1) (2003). The court sentenced the defendant to ten years, the midpoint in the range.

As to the application of the enhancement factors, the trial court determined the factors were "pretty seriously weighted in the scheme of things" and were sufficient to "adjust the range significantly upward in the range of eight to twelve." The court found that the one applicable mitigating factor had "some bearing" on the court's determination and settled on a sentence of ten years, rather than the eleven years sought by the State. We conclude that the trial court did not abuse its discretion in sentencing the defendant to the midpoint in the range and that its findings were adequately supported by the record.

We note that the Supreme Court in Blakely clarified its earlier holding in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000), concluding that "[o]ur precedents make clear . . . that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." Blakely, 542 U.S. at __, 124 S. Ct. at 2537. Additionally, under the Apprendi/Blakely scheme, prior

adult convictions may still be used to enhance a defendant's sentence.  See State v. Christopher Kirkendall, No. W2004-00784-CCA-R3-CD, 2004 WL 2083760, at *4 (Tenn. Crim. App. Sept. 16, 2004), applic. for perm. to appeal filed (Tenn. Nov. 24, 2004).  In the present case, the defendant has one prior misdemeanor and one prior felony conviction such that enhancement factor (2) was properly applied by the trial court.  We deem application of factor (2) to be sufficient alone to justify the sentence imposed by the trial court.  Accordingly, the Blakely decision does not affect the defendant's sentencing which, we conclude, is supported by the record.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE