EDWARD CLINE

*v.*

STATE OF TENNESSEE.

(*Knoxville,* September Term, 1958.)

Opinion filed December 12, 1958.

252

Sidney Davis, Clinton, for plaintiff in error.

James M. Glasgow, Assistant Attorney General, for the State.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is an appeal from a conviction of a conspiracy to dynamite and destroy the Clinton High School at Clinton, Tennessee, the punishment fixed by the jury being from two to ten years in the State penitentiary.

The indictment charges that on or about October 13, 1957, Clifford Lowe, Avon Nolan and Edward Cline did "unlawfully, intentionally, willfully, and feloniously enter into an agreement to commit an illegal act or acts capable of producing conditions destructive of life or property by the possession or transportation or use of explosives, dynamite, and for the illegal purpose of destroying the Clinton High School by an explosion or explosions of an illegal nature in violation of Code Section 39-1407 of the Tennessee Code Annotated".

The aforesaid indictment was returned on January 29, 1958, in the Criminal Court of Anderson County. The defendants and each of them entered a plea of not guilty. The District Attorney General, however, by permission of the court, entered a *nolle prosequi* as to the defendant Nolan, and that "he go hence and for nothing held." Thereupon the defendants, Clifford Lowe and Edward Cline, were put to trial upon the indictment which resulted in a verdict of not guilty as to Lowe and a verdict of guilty as to Cline with his punishment fixed as above stated.

The defendant was ably represented by counsel, who has filed the following assignments of error with a supporting brief:

(1) "The court erred in allowing the conviction to stand because there was no evidence to sustain the conviction."

(2) "The court erred in refusing to grant a new trial because the state entered a *nolle prosse* as to Avon Nolan and the jury acquitted Clifford Lowe of the crime of conspiracy and it is impossible to be guilty of a conspiracy."

The bill of exceptions is in narrative form, which was approved by the trial judge and the District Attorney General. The defendant's counsel state at the outset, "The defendant, Edward Cline, had no funds with which to properly defend himself and the evidence was not transcribed by a court reporter." We accept this as true since it is not controverted by opposing counsel. But we are fully satisfied that the record contains an adequate bill of exceptions. Moreover, there is no contention made by the counsel that it is inadequate. It is our well considered opinion that when the trial judge certifies a record to this Court which contains a narrative of the evidence we will hold the same to be adequate to protect all legal rights of a defendant unless the record affirmatively shows that the trial judge abused his authority, or was grossly negligent, in so certifying the record.

Considering the evidence in support of the State's case against Cline, it appears without dispute that during the month of September 1957, which was prior to the indictment, the defendants were seen in Clinton associating together on different occasions.

The defendant Nolan, whose case was dismissed on motion of the State to enter a *nolle prosequi,* testified as a witness for the State. We will later on state the substance of his testimony.

Sheriff Glad Woodward testified to the following facts:

"* * * that on or about the middle of September, 1957, a man by the name of Tom Powell of Anderson County, Tennessee, reported to him that there was some dynamite located near the Clinch River Bridge. The witness further testified that he went to the place and found burlap sack partially filled with dynamite, approximately 156 sticks were in the sack, and that said dynamite was Red Cross Dynamite. The witness further testified that in conducting his investigation he contacted Edward Cline, Avon Nolan and Clifford Lowe. The witness further testified that Edward Cline and Clifford Lowe denied having any knowledge of the dynamite. Witness further testified that while Avon Nolan was in jail he admitted that he, Edward Cline and Clifford Lowe went to Block House Valley Road, brought the dynamite from Block House Valley Road and placed it under the bridge and that Edward Cline had told him that a man had offered him One Thousand Dollars ($1,000.00) to blow up the Clinton High School. The witness further testified that Avon Nolan told him where there was some other dynamite hidden near the bridge and that in October he went to the place where Avon Nolan said the dynamite was hidden and found more dynamite, approximately 156 sticks.

"The witness further testified that while Cline was in jail with Nolan he had Eugene Enix brought to the jail and he talked to Enix in the presence of Cline on Oc-

tober 13, 1957, and Enix stated that Cline came to Kentucky in an effort to get a job and ask him where he could get some dynamite caps; Cline told him that he had some dynamite stored near the Clinch River Bridge in Clinton, Tennessee, and that he had been offered One Thousand Dollars ($1,000.00) to blow up the Clinton High School. Witness further testified that said dynamite was found in Anderson County, Tennessee. It was stipulated that 312 sticks of dynamite was found by sheriff's office but need not be introduced as an exhibit.''

On cross examination Sheriff Woodward testified, as follows:

''* * * that he had never seen Cline, Lowe and Nolan together at any time; that he did not see them with any dynamite in their possession; that he did not see them in or near the Clinch River Bridge and that all he knew about the case was what he had been told by Avon Nolan, one of the defendants that was charged under the indictment, and the statements made by Eugene Enix about the conversation between he and Edward Cline.''

The testimony of Avon Nolan is as follows:

''Avon Nolan testified that he had known Edward Cline and Clifford Lowe for about one year and that he had known Edward Cline about one year and one-half. The witness further testified that he lives in Pop Hollow, Anderson County, Tennessee, and at the time of this hearing he was in the County Jail at Clinton, Tennessee. He further testified that he, Edward Cline and Clifford Lowe got together at Cline's house; that

there was no one else at home; that Cline told he and Lowe that he had some dynamite stored under the bridge and that he wanted them to help him blow up the school house; that this meeting was in the day time and that later that night they went in Cline's car, he Cline and Lowe, and they went two or three miles from Cline's house to Block House Valley Road; that they parked on the left hand side of the road and got two cases of dynamite and fuse and put them in the car; that the dynamite was wrapped in card board boxes; that they had no further discussion, but they brought the dynamite back to Cline's house. This was around the middle of September.

"The witness further testified that he and Clifford Lowe stayed in the car, that they never did set any particular date to blow up the school house; that Clifford Lowe agreed to help Cline, but that he (Nolan) did not tell Cline he would help.

"The witness further testified that about three (3) days after they brought the dynamite from Block House Valley Road and placed in Cline's home, they took the dynamite to a bridge and that he set one sack of the dynamite on the left side of the road and Clifford Lowe set the other sack of dynamite on the right side of the road.

"The witness further states that he was arrested about three weeks from this time.

"The witness further testified that he gave the sheriff information as to the place where the dynamite was stored."

On cross examination he testified "that he turned State's evidence because he wanted to do so and that he

had not been promised a reward or leniency for doing so." He admitted that he along with Clifford Lowe broke ino Lindseys Store.

The next State's witness, one Eugene Enix, testified to the following:

"* * *that he was living in the State of Kentucky in September 1957; that he knew Edward Cline and Clifford Lowe; that Cline came to his home in Kentucky and that Cline stayed with him about a month; that Edward Cline came to Arnold, Kentucky about September 9, 1957, in an effort to get a job; that Cline came from Kentucky back to Jacksboro, Tennessee, and was placed in jail, but while Cline was in Kentucky he ask him (Enix) if he knew where a man could pick up eight or ten dynamite caps, that he had been offered some money to blow up Clinton High School. That he had some boys to help him, and the dynamite was hid under Clinton Bridge.

"The witness further testified that he was in Clinton, Tennessee, with Cline in October 1957, that Cline was in jail and he was brought to the jail and he told Sheriff Glad Woodward in the presence of Cline that Cline wanted to know where he could get eight or ten dynamite caps and he further told the sheriff in the presence of Cline that Cline told him that he had some dynamite hidden and that he had been offered money to blow up the Clinton High School."

One Lester Nation testified that he lived in Cline's home for a year and that at no time did Cline, Clifford Lowe and Avon Nolan bring any dynamite to Cline's home; that Cline, Lowe and Nolan were at his home on several occasions and came and went in Cline's car.

The defendant Cline did not testify. His codefendant, Clifford Lowe, testified he was well acquainted with Avon Nolan and Edward Cline. We was positive that he had never talked to Cline and Nolan about blowing up the Clinton High School; that he had no knowledge of any dynamite being stored near the Clinch River Bridge and did not bring any dynamite to Cline's home. Further testifying he said:

"Defendant further testified that no one had offered him money to destroy the Clinton High School and that he had no knowledge of an offer to Cline or Avon Nolan to blow up the Clinton High School."

We have thus quoted at length the testimony of all witnesses who knew anything about the case exactly as the same appears in the bill of exceptions.

The jury accredited the testimony of Sheriff Woodward, Avon Nolan and the witness Enix.

We think the evidence supports the charge of a conspiracy even though Lowe was acquitted by the jury, and Nolan was permitted his freedom from prosecution by reason of a *nolle prosequi*. It is earnestly and ably argued by defendant's counsel that Edward Cline's conviction cannot stand because of the foregoing facts, i. e. the acquittal of his alleged co-conspirator, Lowe, and the lack of any evidence showing any overt act on his part in furtherance of the conspiracy.

In further support of the first assignment of error that there is no evidence to sustain the conviction it is argued that Avon Nolan "testified that he did not ever agree to help destroy Clinton High School with explosives" and that in order to prove a criminal conspiracy there must

be a combination of two or more persons to do that which is contrary to law, citing *Delaney v. State,* 164 Tenn. 432, 51 S.W.2d 485, 487. It is further argued, "when only two are charged with a conspiracy, and one is acquitted, the conviction of the other is void."

We think the fallacy in the foregoing contention is that *three persons,* including the defendant Cline, were on trial. Only one was acquitted, to-wit, Clifford Lowe. Avon Nolan, who was charged with being one of the conspirators was not acquitted as heretofore pointed out. We thus distinguish the Delaney case from the case at bar.

It must be conceded that under the authority of *Delaney v. State, supra,* that had the jury acquitted both Nolan and Lowe the case against Cline as a joint conspirator would wholly fail. 12 C.J., pp. 616, 617, "Conspiracy", secs. 190 and 191; 15 C.J.S. Conspiracy sec. 82.

The test of Cline's guilt depends upon the effect of the *nolle prosequi* taken by the State as to Avon Nolan. The proper rule applicable to the case at bar is thus stated:

"* * * The proper rule seems to be that so long as the acquittal or death of co-conspirators does not remove the basis for a charge of conspiracy, a single defendant may be prosecuted and convicted of the offense. * * * Moreover, where two conspirators are indicted jointly, the death of one does not relieve the other of conviction, if the conspiracy between him and the decedent is established. One of three persons who are indicted for conspiracy may likewise be convicted notwithstanding the death of the second and the acquittal of the third. Upon the same principle, one of two conspirators may be convicted, although his co-conspirator has secured

immunity from prosecution by becoming a witness for the prosecution. Likewise, one of two defendants indicted for conspiring with other unknown persons may be convicted notwithstanding the acquittal of the other." 11 Am.Jur., sec. 26, "Conspiracy", pp. 560 and 561.

See also annotations in 72 A.L.R. 1180, and 97 A.L.R. 1312, which support the text.

■ We deem it unnecessary to define a criminal conspiracy at common law. Indeed it is difficult to define as adequate to every situation. The authorities, however, are generally in accord that, "A conspiracy once formed, continues to exist until consummated, abandoned, or otherwise terminated by some affirmative act." 15 C.J.S. Conspiracy sec. 35, p. 1057.

■ While mere knowledge by one alleged conspirator that an unlawful act has been agreed upon, and without participation does not make one a conspirator, yet, "If there is concert of design there need not be participation in every detail of its execution, or knowledge of the scope of the conspiracy." 15 C.J.S. Conspiracy sec. 40, p. 1062.

Contention is made that there is no proof of any overt act by the defendant Cline, and in the absence thereof no crime has been committed.

■ "At common law no overt act is necessary to constitute a criminal conspiracy, and this rule obtains unless changed or limited by statute. The only significance of acts done in furtherance of the object of a conspiracy is as evidence of the alleged combination, which alone constitutes the offense." 15 C.J.S. Conspiracy sec. 43, p. 1066.

The foregoing common law rule is modified by Section 39-1102, T.C.A., as follows:

"No agreement shall be deemed a conspiracy unless some act be done to effect the object thereof, except an agreement to commit a felony on the person of another, or to commit the crimes of arson or burglary."

■■ We think a proper construction of the foregoing Section of the Code when applied to the case at bar requires some evidence of an overt act to sustain the charge of a criminal conspiracy to destroy the Clinton High School by the use of dynamite or other similar explosives. We think that the evidence when considered as a whole sustains the charge, and that the essential element of an overt act by Avon Nolan and the defendant Cline is sufficiently shown.

There are cases almost without number dealing with the question of "overt acts" and what constitutes an "overt act" when such an act is an essential element in a particular crime. A number of cases are cited in 30 Words and Phrases, Overt Act, p. 580, from which we quote:

"An 'overt act' must be something more than evidence of the conspiracy. It must be an act done by one of the parties to carry out the intent, and it must be such as would naturally effect that result; at least, it must be a step towards the execution of the conspiracy. *Williams v. State,* 16 Okl.Cr. 217, 182, P. 718, 723.

"An 'overt act' is some act done to effect the object of the conspiracy. Gist of conspiracy is agreement to effect unlawful end, but, before offense is completed, party to conspiracy must do some 'overt act' (Cr.Code

sec. 37 (18 U.S.C.A. sec. 88)). *Dahly v. U. S.*, 8 Cir., 50 F.2d 37, 42.''

We find conclusive evidence of an overt act by the defendant Cline in his unexplained possession of dynamite in large quantities. His possession was unlawful according to the statutes of Tennessee. Moreover, he had made a statement that he had been offered $1,000 to blow up the Clinton Schoolhouse. We are justified in the conclusion that he had thus made preparation for carrying out the criminal conspiracy with his co-defendants. While it is true that Avon Nolan stated ''he did not tell Cline he would help'', yet he admits that he acted in furtherance of the design by helping Cline to load 156 sticks of dynamite into the latter's automobile and transferred it to his (Cline's) home, knowing the purpose for which it was to be used.

The assignments of error are overruled, and the judgment of the trial court is affirmed.