STATE of Tennessee, Appellee,

v.

Charles R. MENCER, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

June 29, 1990.

Charles W. Burson, Atty. Gen. & Reporter, Linda Ann Hammond, Asst. Atty. Gen., Robert C. Sanders, Asst. Dist. Atty. Gen., for appellee.

John S. Colley, III, Columbia, for appellant.

## OPINION

BIRCH, Judge.

The Circuit Court of Maury County entered judgment upon a jury verdict convicting Charles R. Mencer, the defendant, of conspiracy to possess a Schedule VI controlled substance (marijuana) with intent to sell or deliver.[1] For this offense the trial court imposed a five-year sentence to be served in the Department of Correction. In addition, the jury found Mencer guilty of keeping a room or table for gaming,[2] for which the trial court fixed a sentence of three years and approved a jury-imposed fine of $500. These sentences are consecutive.

Mencer appeals as a matter of right. Besides contesting the sufficiency of the convicting evidence, he presents five issues for our determination:

1) Whether the trial court erred in refusing to dismiss the indictment;

---

1. Tenn.Code Ann. § 39–6–417(a).

2. Tenn.Code Ann. § 39–6–613.

2) Whether the trial court erred in admitting evidence seized during the search of his office;

3) Whether the trial court erred in admitting money seized from his wallet;

4) Whether the trial court erred in refusing to grant him a trial separate from his co-defendant; and

5) Whether the sentences imposed are proper in length and manner of service.

Because of reversible error in the trial court's refusal to dismiss the indictment, we vacate the conspiracy conviction and sentence. The judgment as modified is affirmed.

### I

■ Mencer first contends that the trial court should have dismissed count one[3] of the indictment because of its failure to allege an overt act in furtherance of the conspiracy. This omission, he maintains, voids the indictment.

■ At common law, there is no requirement that an overt act be alleged in a conspiracy indictment. *Cline v. State*, 204 Tenn. 251, 319 S.W.2d 227 (1958). Such is not the case here, for the statute abrogates the common law rule by establishing the commission of an overt act in furtherance of the conspiracy as an essential element of the offense.[4] The rationale upon which this requirement is based is most compelling, and the case of *United States v. Cecil*, 608 F.2d 1294 (1979), *cited with approval in State v. Lloyd*, C.C.A. No. 90, Jackson (Opinion filed July 10, 1980), perhaps states it best:

[t]o allow a prosecutor or Court to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection that the grand jury was designed to secure, because a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him.

608 F.2d at 1297.

Our courts have consistently held that all essential elements of the offense must be alleged in the indictment. *See e.g., State v. Thorpe*, 614 S.W.2d 60, 65 (Tenn.Crim.App. 1980). Therefore, the omission of an overt act from the indictment under review is fatal to its validity. 614 S.W.2d at 66.

■ After hearing the defendant's motion to dismiss the indictment, the trial judge ruled that the state had cured the defect by furnishing him with a bill of particulars. We find to the contrary; this effort was ineffective because a bill of particulars does not assume the character of an indictment and cannot resuscitate it. *See State v. Lloyd*, cited above.

Thus, we conclude that under prevailing case law and the requirements of Tennessee Code Annotated § 39–6–417(a), the trial judge erred reversibly in failing to dismiss the indictment.

### II

■ As to the first of the two suppression issues, the record discloses that Mencer sought pretrial to suppress the admission of evidence seized as a result of a search by warrant of an office located in a building described as the Bunny Bread[5] building. The facts pertinent to this issue, as adduced at a jury-out hearing, established that the Maury County Sheriff's Department and the Tennessee Bureau of Investigation joined in an effort to identify and apprehend persons selling drugs in Maury County. Because of his reputation as a drug supplier, Mencer's co-defendant, Warner Bolton, was a target of this operation. Bolton made several sales of controlled substances under circumstances which were arranged and closely monitored by participating officers. The operation

---

**3.** Count one of No. 4105, charges conspiracy to possess marijuana with intent to sell or deliver, in violation of Tenn.Code Ann. § 39–6–417(a).

**4.** *See* Tenn.Code Ann. § 39–6–417(a). [P]rovided, however, that no agreement shall be deemed a conspiracy unless some act be done to effect the object thereof.

**5.** This location was formerly a bread store.

was to culminate in Bolton's sale of one hundred ninety-six grams of cocaine to Maxie Gilliland, the TBI agent in charge. The agents rented several rooms in a local motel for use as a command post and for completing post-arrest matters.

William H. "Tick" Wright was also slated for arrest that evening; his case, however, was unrelated to Mencer and Bolton. Following Bolton's arrest, sheriff's deputies and TBI agents closed in to arrest Wright at his jewelry store, which was four miles from the motel. Agent Gilliland, maintaining surveillance, drove past the store three or four times. As he was doing so, he noticed an orange Chevrolet Blazer doing the same thing—driving back and forth past the establishment and watching what was happening. He recognized the driver of the Blazer as the same individual whom he had seen with Bolton during a previous drug buy at the Bunny Bread office.

The Blazer turned off its lights and pulled to a vantage point above the jewelry store. It remained for three or four minutes and then returned to the road with its lights still off. Deputy Griffin, who had first noticed the Blazer parked above the store, passed this information on to the officers at the motel. Upon returning to the motel, Griffin again observed the Blazer in the parking lot. He suspected that its driver was engaged in counter-surveillance and felt that the operation was imperiled. He stopped the Blazer and asked Mencer to get out. Griffin took Mencer's license and detained him. Officers seized approximately $3,000 contained in his wallet.

Soon after Bolton's arrest, he and Agent Gilliland began to discuss the possibility of Bolton cooperating with the authorities. On the following day, Bolton agreed to cooperate; he consented to a search of the Bunny Bread office, Warner's Lounge, and apartment A–2 in the Willows apartment complex. Furthermore, he accompanied authorities to the Bunny Bread location and the Willows apartment and gave them a key.

Mencer remained in custody for an uncommonly long period of time.[6] He argues that the search of the Bunny Bread office violated his constitutional rights. We reject this argument primarily because the search of the Bunny Bread office was accomplished by consent obtained from one with the authority to consent (Bolton). But more significantly, in light of our holding as to the conspiracy count, only evidence tending to prove that Mencer kept a gaming table is relevant at this juncture. And from the record, it cannot be disputed that the investigators obtained consent to search the office before the several gaming tables and gambling paraphernalia were found there. Thus we find that none of the defendant's constitutional rights were violated in the search of the office and the seizure of the tables and equipment used for gaming. This issue is overruled.

### III

■ With regard to the seizure of money, we think that the $3,000 Mencer had when detained should have been excluded, as did the trial judge who first considered the question. However, in light of the cogent and abundant evidence linking Mencer to gambling, failure to exclude this evidence constitutes harmless error, at best. *See* Rule 52(a), Tenn.R.Crim.P.

### IV

■ Mencer also assigns as error the refusal of the trial judge to sever his trial from that of his co-defendant, Bolton. He argues that the sheer weight of the evidence against Bolton also convicted him, and that admission of certain statements made by Bolton during the course of the police investigation violated his (Mencer's) constitutional right of confrontation.[7]

■ We cannot agree with these contentions because Mencer's acquittal on three of the five charges contradicts his "conviction by association" argument. But even more significantly, the statements made by his co-defendant did not in any way relate

---

6. Between sixteen and twenty-six hours.

7. Bolton did not testify at trial.

to the gaming charge. Thus, we find that the necessity for severance with respect to the gaming charge is not supported by the record, and the necessity for severance with respect to the conspiracy charge is moot.

■ In any event, Mencer's motion for a severance was addressed to the discretion of the trial judge. *State v. Coleman*, 619 S.W.2d 112, 116 (Tenn.1981). As Mencer has not shown that he was prejudiced by the trial judge's denial of a severance, we decline to reverse this ruling. 619 S.W.2d at 116.

### V

■ We next consider Mencer's sufficiency issue, and for that, we focus upon the evidence heard by the jury.

The facts of record establish that a citizen formerly addicted to cocaine volunteered to assist TBI agents in their effort to apprehend Maury County drug dealers. With the help of the Sheriff's Department, TBI Agents Gilliland and Bolin arranged for the citizen to make a series of drug purchases from Bolton. These transactions were visually monitored and most were recorded on audio tape, video tape, or both.

With the help of the citizen, Agent Gilliland was able to pose as the citizen's uncle "James." Through this ruse, Gilliland was able to accompany the citizen on three of the controlled buys. Eventually, Bolton felt sufficiently comfortable with "James" to sell drugs to him directly. The trap was sprung when Bolton met Gilliland at the motel and sold him a large quantity of cocaine for $9,100. Bolton was immediately arrested.

Another suspected drug dealer, "Tick" Wright, was also scheduled for arrest that night. Immediately prior to Wright's arrest, Agent Gilliland observed an orange Blazer driving back and forth in the vicinity. As officers were arresting Wright, they saw the orange Blazer parked above them. The vehicle's driver appeared to be monitoring their activities. When the officers returned to the motel command post,

they again saw the Blazer in the parking lot. The driver passed them, made a U-turn, and drove back in their direction. Suspecting that his interest in their activity was more than casual, the officers stopped the vehicle and told Mencer to get out.

Mencer was carrying approximately $3,000 in his wallet when he was stopped; officers seized the money and detained him in a room at the motel. An inventory search of the Blazer yielded marijuana residue, marijuana packaging material, and a portion of an airline ticket to Houston, Texas.

When asked to identify his partner in the enterprise, Bolton implicated Mencer. Bolton also told the authorities that he did not personally transport the drugs; instead "his man" [Mencer] traveled to Texas to get them. Bolton consented to a search of the Bunny Bread office and surrounding premises that he shared with Mencer. The search produced a great deal of evidence: several gambling tables, an assortment of gambling paraphernalia, a set of scales, cocaine, chemicals used to dilute cocaine, ten pounds of marijuana packaged in one-pound bags, "drug bags" typically used to package drugs for resale, literature relating to the care and feeding of marijuana plants, personal papers belonging to Mencer, and business cards advertising Quality Motor Sales embossed with both Bolton's and Mencer's names.

As a part of their gambling operation, Mencer and Bolton maintained an apartment at the Willows for the purpose of receiving telephoned bets. Following a consent search of this apartment, investigators seized two sets of scales, a quantity of a chemical cutting agent, numerous drug repacking supplies, fifty-one pounds of marijuana, nearly two pounds of cocaine in rock form, cocaine in smaller packages, and an airline baggage claim stub. Investigators also found two suitcases which had been heavily dusted with talcum powder.

Besides the evidence heretofore described, the state produced a witness whose part-time employment had been to accept bets called in on two telephone lines serving the apartment.

Here, Mencer argues that the jury's verdict is contrary to the law and the evidence. Limiting our examination to the gambling conviction, we have no difficulty finding that the evidence is sufficient to support the conviction. After viewing the evidence in the light most favorable to the state, we find that any rational trier of fact could have found the defendant guilty of operating a gaming table or gaming room beyond a reasonable doubt. Tennessee Rule of Appellate Procedure 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

## VI

The defendant also complains that he should have been sentenced under the Community Corrections Act, and that his sentence [8] is excessive.

Since Mencer was sentenced prior to November 1, 1989, we review these issues *de novo* with no presumption that the trial court imposed a proper sentence. Tenn.Code Ann. § 40–35–402 (Supp.1988).

We must consider in this review:

1) Any evidence received at the trial and sentencing hearing;
2) The pre-sentence report;
3) The principles of sentencing;
4) The arguments of counsel relative to sentencing alternatives;
5) The nature and characteristics of the offense;
6) Any mitigating or enhancing factors;
7) Any statements made by the accused in his own behalf;  and
8) The accused's potential or lack of potential for rehabilitation or treatment.

*See* Tenn.Code Ann. §§ 40–35–103 and –210; *State v. Moss,* 727 S.W.2d 229, 236 (Tenn.1986); and *State v. Taylor,* 744 S.W.2d 919, 920 (Tenn.Crim.App.1987).

Where a defendant contends, as Mencer does here, that he should have been sentenced to community correction, this court must also consider the eligibility criteria contained in the Community Corrections Act, Tennessee Code Annotated § 40–36–106(a), as well as the report of the entity administering the Community Corrections Act in Maury County.

Following trial, the defendant sought an order of reference to the South Central Tennessee Community Corrections Program so that the defendant could be *considered* for the Community Corrections Program pursuant to Tennessee Code Annotated § 40–36–101 *et seq.*

The trial court denied the motion, thereby effectively foreclosing a sentence to Community Corrections.

Surprisingly enough, Mencer meets the eligibility criteria for Community Corrections Act sentencing. Under ordinary circumstances, where it is apparent from the record that the trial judge misapprehended *eligibility* for community correction, we would remand for the trial judge to order a report and consider the issue on its merits.

But in Mencer's case, no remand is necessary because we are unconvinced that sentencing Mencer under the Community Corrections Act would accomplish the desired amount of rehabilitation and deterrence.

The second part of Mencer's sentencing issue concerns the trial judge's order that the sentences be served consecutively. This issue is now moot, and we find the remaining three-year sentence appropriate.

In summary, we vacate the conviction and sentence on the count charging conspiracy, and we dismiss the conspiracy count of the indictment. We affirm the judgment of conviction and the sentence on the gambling count.

DWYER and JONES, JJ., concur.

---

8. At this point, only the three-year sentence im-
posed for the gaming offense remains.