IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 18, 2010

**STATE OF TENNESSEE v. CHRISTOPHER METCALF**

**Direct Appeal from the Circuit Court for Lincoln County**
**No. S0900052      Robert Crigler, Judge**

---

**No. M2009-02084-CCA-R3-CD - Filed September 20, 2010**

---

The Defendant, Christopher Metcalf, pled guilty to initiation of a process intended to result in the manufacture of methamphetamine and agreed to a nine-year sentence, with the trial court to determine the manner of service. At sentencing, the Defendant requested an alternative sentence, but the trial court ordered the Defendant to serve his entire sentence in the Tennessee Department of Correction. The Defendant appeals, contending the trial court erred when it denied his request for an alternative sentence. After a thorough review of the record and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

William Harold (at trial), Shelbyville, Tennessee, and James R. Frazier (on appeal), Lawrenceburg, Tennessee, for the Appellant, Christopher Metcalf.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Lindsy Paduch Stempel, Assistant Attorney General; Charles F. Crawford, Jr., District Attorney General; Hollynn Eubanks, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

During the Defendant's plea submission hearing, the State set forth the following summary of the factual basis for the Defendant's guilty plea to initiation of a process intending to result in the manufacture of methamphetamine:

[O]n May 9, 2009 deputies for the Lincoln County Sheriff's department received information that there might be a meth lab located in a room at the Budget Inn located on the Huntsville Highway here in Lincoln County, Tennessee.

They went to that location to do a knock and talk and were invited in by [the Defendant], who they spoke to. [The Defendant] gave a verbal permission to search as well as a written permission that was executed.

And when they did search they found a number of items used in the manufacture of methamphetamine, specifically 32 ounces of Coleman camping fuel; electrical tape, a bilayer liquid, tubing with residue; Muriatic acid, lithium batteries; a plastic container and a pill grinder with residue.

The Defendant pled guilty and agreed to a nine-year sentence, with the trial court to determine the manner of service of the sentence. The following evidence was presented during the Defendant's sentencing hearing: According to a presentence report introduced by the State, the Defendant was twenty-eight at the time of this offense and twenty-nine at sentencing. The report does not indicate what level of education the Defendant received, saying only that he has worked as a mechanic since becoming an adult.

The Defendant told the officer who prepared the report that he infrequently drinks alcohol, has used marijuana since age fifteen or sixteen, and used methamphetamine two to three times a week between April 20, 2009, and May 9, 2009. He explained that he stopped using methamphetamine when he was arrested in this case, saying that, for this reason, his arrest was "a great thing."

The report includes a statement from the Defendant who denied any knowledge of the drug paraphernalia in the hotel room in which police found him. He claimed he was present in the hotel room only because a friend, who had just given him a ride, asked him to wait in the hotel room, saying he would "be right back." He said he simply "was at the wrong place at the wrong time."

The report indicated that the Defendant had at least eleven misdemeanor convictions, including vandalism, domestic violence, unlawful drug paraphernalia uses and activities, failure to carry/exhibit driver's license on demand, two convictions for driving while license was suspended, failure to stop at scene of accident, having an unregistered vehicle, failure to appear, theft, and simple possession of a Schedule II substance for resale. The report indicated that Defendant violated the probation he received for several of these convictions,

2

though it does not clearly indicate which sentences were violated.

In addition to the presentence report, the State introduced documentation of eight additional convictions not listed within the Defendant's presentence report: one conviction for simple possession of a Schedule IV substance; one conviction for domestic assault ; three convictions for operating a motor vehicle without a driver's license; four convictions for possession of "undersized snook"; and four convictions for possession of "out of season snook." For each of these convictions, the Defendant received and later violated a probated sentence.

The Defendant testified at the sentencing hearing. Acknowledging his long criminal record, he asked the trial court to grant him probation:

> Man, it ain't about no sympathy or nothing like that. I don't know, man. It would be nice to get some kind of probation. I know I have got a lot of violation[s] of probation on my record. The way I see it, you really can't convict me of my old past. If that is what you have got to do, that's what you have got to do.

He testified that, in the event the court granted probation, family who lived nearby would provide him with a place to live and help him obtain employment. The Defendant said that money would not be "a problem," because his father owned a business and would provide him with employment. He said he would comply with the terms of probation, including drug tests. He explained that living drug-free would be "better than what I am looking at, you know. I am tried of foolishness." The Defendant testified that he had great confidence in his skills as an auto mechanic.

On cross-examination, the Defendant acknowledged that he owed $202.25 related to a 2007 vandalism conviction, $598.90 on a domestic violence conviction, a total of $1041.81 on three driving license offenses, and $517.05 on a possession of drug paraphernalia conviction. He testified that he accrued this debt while he was "hanging out on the streets . . . not knowing what I was supposed to be doing" and said, "Everybody deserves a second chance." The Defendant agreed that an auto mechanic "who applies himself" can make "pretty good money."

On redirect examination, the Defendant agreed that being convicted of his first felony had "opened up his eyes," though he insisted he was "in here for somebody else's habit and not [his] own."

At the conclusion of the sentencing hearing, the trial court denied the Defendant's

request for alternative sentencing, ordering him to serve his nine-year sentence in confinement. The Defendant now appeals this judgment.

## II. Analysis

On appeal, the Defendant contends the trial erred when it denied him alternative sentencing for the nine-year sentence he accepted in his plea agreement. The Defendant argues that, given the absence of prior felony convictions in his criminal record, the candor he displayed during the sentencing hearing, and the fact that he has a place to live and work and a supportive family, the court should have granted some form of an alternative sentence. The State responds that the trial court properly denied alternative sentencing because it did so in reliance on sentencing principles, the Defendant's record, and the circumstances of the offense.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d); *State v. Mencer*, 798 S.W.2d 543, 549 (Tenn. Crim. App. 1990) (finding community corrections to be a form of alternative sentencing and therefore holding the de novo standard of review of T.C.A. § 40-35-402(d) to apply to community corrections). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the 1989 Sentencing Act, T.C.A. section 40-35-103 (2006), we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001).

Due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. (footnote omitted). T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider " them. T.C.A. § 40-35-102(6) (emphasis added).

A defendant seeking probation bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2006). As the Sentencing Commission points out, "even though

4

probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2006), Sentencing Comm'n Cmts.

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(A)-(C) (2006). In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

At the conclusion of the sentencing hearing in this case, the trial court sentenced the Defendant to the agreed-upon sentence of nine years as a Range I, Standard offender. The court then set out to determine the manner of service. It first stated that, in determining the Defendant's manner of service of his sentence, it was relying upon the evidence at the sentencing hearing, the presentence report, the nature and characteristics of the criminal conduct, the principles of sentencing, and the Defendant's rehabilitative potential.

The trial court then explicitly addressed the three factors Tennessee Code Annotated section 40-35-103 instructs courts to address when determining a defendant's eligibility for an alternative sentence. First, after acknowledging the absence of prior felonies from the Defendant's criminal record and the Defendant's candor in admitting to his drug use, the trial court drew attention to the fact that the Defendant had used marijuana since age fifteen or sixteen and used methamphetamine two to three times a week from April 20, 2009, to May 9, 2009. Though troubled by the Defendant's long history of drug use, he congratulated the Defendant on having chosen to stop using methamphetamine after his arrest in May 2009.

Based upon the Defendant's admitted drug use and his extensive criminal history, the trial court found that "confinement [was] needed to protect society by restraining a defendant who has a long history of criminal conduct."

Second, the trial court expressed its belief that methamphetamine is "the worst drug you can use" due to its tendency to induce violent and irrational behavior. Because the Defendant's offense in this case involved methamphetamine drugs, the trial court found that "incarceration [was] needed to avoid depreciating the seriousness of [the Defendant's] offense." Third, citing the numerous probation violations in the Defendant's criminal history, the trial court found that "alternative sentencing ha[d] been tried in the past both recently and frequently unsuccessfully." Based upon its three findings under section 40-35-103 and upon the fact that the Defendant, having been convicted of a Class B felony, was not a "favorable candidate for probation," the trial court denied the Defendant an alternative sentence.

Indeed, the Defendant is not a "favorable candidate" for alternative sentencing, and we agree with the trial court's imposition of confinement. The Defendant has numerous misdemeanor convictions and admitted to a long history of drug use, which is criminal conduct. Thus, the record supports the trial court's finding that "confinement [was] necessary to protect society by restraining a defendant who has a long history of criminal conduct." *See* T.C.A. § 40-35-103(A). Similarly, the trial court adequately explained its finding that "confinement was necessary in order to avoid depreciating the seriousness" of methamphetamine manufacture when it described the highly dangerous effect of methamphetamine drugs. *See* T.C.A. § 40-35-103(B). Finally, the presentence report was replete with documentation of the Defendant's numerous failures to comply with previous terms of probation, which supports the trial court's finding that the "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the [D]efendant." *See* T.C.A. § 40-35-103(C). In sum, the record adequately supports the trial court's findings and demonstrates that the trial court considered the principles of sentencing, the facts of this case, and the Defendant's candor when it imposed confinement. As such, its denial of alternative sentencing is presumptively correct. *See* T.C.A. § 40-35-401(d); *Mencer*, 798 S.W.2d at 549.

The Defendant has failed to carry his burden of proving his suitability for probation. T.C.A. § 40-35-303(b) (2009). We conclude that the Defendant's lengthy history of criminal conduct, his past failures to comply with measures less restrictive than confinement, and the seriousness of the consequences of methamphetamine manufacture require his confinement in this case. *See* T.C.A. § 40-35-103(1), (5); *Kendrick*, 10 S.W.3d at 656; *Dowdy*, 894 S.W.2d at 305. The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude the trial court properly denied the Defendant an alternative sentence. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE