# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 15, 2011

## STATE OF TENNESSEE v. CINDY MAE NELSON

### Direct Appeal from the Criminal Court for Sullivan County
### No.  S56,635     R. Jerry Beck, Judge

### No. E2010-01288-CCA-R3-CD - Filed April 29, 2011

The Defendant, Cindy Mae Nelson, pled guilty to two counts of aggravated cruelty to animals, a Class E felony, and agreed to an eighteen-month sentence, with the trial court to determine the manner of service of her sentence.  After a hearing, the trial court ordered the Defendant to serve her entire sentence in the Tennessee Department of Correction ("TDOC") and ordered her to pay $15,816.76 in restitution.  The Defendant now appeals, contending the trial court erred both when it denied alternative sentencing and when it set the amount of her restitution.  After a thorough review of the record and applicable law, we conclude the trial court properly denied alternative sentencing but erred in setting the amount of her restitution.  As such, we reverse and remand the case for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Reversed in Part, and Remanded

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Steve McEwen (on appeal), Mountain City, Tennessee, and Andrew J. Gibbons (at trial and on appeal), Blountville, Tennessee, for the Appellant, Cindy Mae Nelson.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; H. Greeley Wells, District Attorney General; Julie R. Canter, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## I.  Facts

## A. Background

This case arises from the Defendant's severe neglect of her two adult pit bull dogs. A Sullivan County grand jury indicted the Defendant for two counts of aggravated cruelty to animals. The Defendant pled guilty to these charges and agreed to an eighteen-month sentence, with the trial court to determine the manner of service of her sentence. At the Defendant's plea submission hearing, the parties stipulated to the following facts underlying the Defendant's guilty pleas:

[O]n February 5, 2009, a Kingsport city animal control officer responded to 615 Gillespie Street after receiving a complaint of animal neglect. Upon his arrival he observed a black pit bull that was chained to a truck, having no provision of shelter, food, or water. The dog was lying on frozen ground underneath the truck, apparently seeking shelter from the cold, as the temperature was approximately 15 degrees on this particular day. The dog's condition could not be assessed as he could not be coaxed from underneath the truck.

Also at the residence was a second pit bull chained near a house, but also without food and water. The officer noted that the dog appeared to be suffering from extreme malnourishment, as its bones were protruding.

The officer spoke with the dogs' owner, [the Defendant], whose attitude was one of indifference. He advised Ms. Nelson that he would return the following day, at which time he would expect the situation to be rectified.

The officer returned the following day, February 6, 2009, and found the dogs' conditions . . . unchanged, and the dogs were still without food, shelter, or water. He was able to get the black dog from underneath the truck, at which time he noted the severity of his condition.

The dog was so starved and emaciated, and because he was too weak to walk, had to be carried. The dog's shoulders, ribs, backbone, and pelvis protruded profusely, and his abdomen was tucked, and his back bowed over. He had a listless demeanor, and his eyes had a sunken appearance. He had untreated abrasions and ulcerations to his face, body, and ears, and he had incurred severe frostbite. Both dogs had dried fecal matter on their rump area.

The dogs were seized and taken to a veterinarian who advised that both

2

were grossly starved and dehydrated. The black dog, the male, had excessive frostbite trauma to his rump and tail, with several inches of the tail eradicated. The ulcerated areas to . . . his body had become infected, and upon examination he was found to have swollen lymph nodes which are a sign of systematic infection.

The male weighed 38 pounds and, according to medical personnel, should have weighed at least 60 pounds. The condition of the female dog was not as poor, but she weighed only 28 pounds, with her ideal weight being around 50 pounds.

At the conclusion of the plea submission hearing, the trial court sentenced the Defendant to eighteen months for each of her aggravated cruelty to animals convictions, with the sentences to be served concurrently. The trial court imposed a $600 fine and, as Tennessee Code Annotated section 39-14-212 requires for any defendant convicted of aggravated animal cruelty, entered an order prohibiting the Defendant from owning an animal for ten years.

### B. Alternative Sentencing & Restitution Hearing

The trial court subsequently held a hearing to determine the manner of service of the Defendant's eighteen-month sentence and the amount of restitution the Defendant would be ordered to pay the Kingsport Animal Shelter for boarding and rehabilitation of the dogs. At this hearing, the State entered a presentence report, which set forth the following information about the Defendant: The Defendant, who was thirty-one at the time of sentencing, dropped out of high school in North Carolina after completing the eleventh grade. She reported obtaining her G.E.D., but the officer preparing the presentence report was unable to verify this fact. The Defendant had completed no further education or vocational training. She had no documented history of drug use. Her only reported physical impairment was being "almost" blind in her right eye.

From 2003 to the present, the Defendant had collected at least eight misdemeanor convictions, including convictions for driving without a license, telephone harassment, domestic assault, assault, reckless endangerment, and theft up to $500. The Defendant had been employed sporadically, working at a Wendy's restaurant from 1997 to 1998, at a Dollar General Store 1999 to 2001, and at Advanced Call Center Technologies ("ACCT")from April 2010 to sentencing. The Defendant reported earning $7.25 per hour at ACCT. She also reported holding "scattered and brief" employment with temporary employment services.

The Defendant had, at the time of sentencing, two children from her first marriage that ended in 2002, and two additional children from her second marriage that ended in 2008.

Each ex-husband had custody of his respective children, and the Defendant was paying child support for her four children through the wages she received at ACCT.

In a statement given to the officer preparing her presentence report, the Defendant stated that "the two dogs were not taken care of the way they should have been but other circumstances were involved." She explained that a man with whom she had a romantic relationship and who was living with her wanted to breed pit bulls, so the pair bought the two pit bulls. The man subsequently left the Defendant for another woman and the dogs remained at her house. Acknowledging that the dogs were not fed as they should have been, the Defendant explained that she was worried about paying rent. She concluded: "I'm not trying to push blame on others because I had a part in it and could have done better."

The State entered an itemized list of the Kingsport Animal Shelter's costs for caring for the adult pit bulls February 6, 2009 through December 14, 2009 and caring for the female pit bull's eight puppies from August 6, 2009, to December 14, 2009. The Shelter boarding expenses totaled $15,100, and its veterinary services expenses totaled $716.76, for a total expenditure of $15,816.76.

At the hearing, the Defendant testified that, if imprisoned, she would lose her job at ACCT and that her lengthy criminal record would prevent future employers from offering her work.

Donna Marie Davidson, the senior supervisor of the Humane Society of Greater Kingsport, testified that, when the Humane Society received the dogs in this case in February 2009, the dogs were severely under-nourished, and the male dog suffered from frostbite. The female dog was not pregnant when she arrived at the shelter. While the dogs remained in the care of the shelter, they were housed in the same pin. Davidson testified that the shelter housed the dogs together because it had limited space and because the Defendant refused to relinquish ownership of the dogs to the shelter. During this time, the female dog became pregnant and gave birth to eight puppies. The dogs were released from the shelter to private homes in December 2009.

Davidson testified that the total expense of caring for the dogs and their puppies was $15,816.76. She explained that this expense included the costs of providing boarding, veterinary services, and vaccinations for a total of ten dogs over a 312-day period. She testified that the shelter's daily boarding expense was $20, which accounted for the price of food and the wages of the shelter's employees. She testified that originally she calculated the shelter to have spent $30,000 caring for the dogs, but that she reduced this amount by half in exchange for the Defendant's agreement to relinquish custody of the dogs to the shelter.

4

At the conclusion of the hearing, the trial court ordered the Defendant to serve her eighteen-month sentence in the TDOC and to pay $15,816.76 in restitution to the Humane Society of Greater Kingsport. The Defendant now appeals these judgments.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied her an alternative sentence and when it set the amount of her restitution

## A. Denial of Alternative Sentencing

The Defendant contends the trial court erred when it denied alternative sentencing because the evidence does not support the trial court's finding that her criminal record and her "irresponsible" conduct in this case required her confinement. She argues that, because she is a "favorable" candidate for alternative sentencing, her criminal record includes only misdemeanors, and she has maintained steady employment in order to pay child support for her four children, the trial court should have granted either full probation or split confinement.The State responds that the record supports the trial court's finding that the circumstances of the offense and the Defendant's criminal record required her confinement in this case.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d); *State v. Mencer*, 798 S.W.2d 543, 549 (Tenn. Crim. App. 1990) (finding community corrections to be a form of alternative sentencing and therefore holding the de novo standard of review of T.C.A. § 40-35-402(d) to apply to community corrections). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the 1989 Sentencing Act, T.C.A. section 40-35-103 (2006), we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001).

If a defendant seeks probation, then that defendant bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2006). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2006), Sentencing Comm'n Cmts.

5

Due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. (footnote omitted). T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider " them. T.C.A. § 40-35-102(6) (emphasis added).

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(A)-(C) (2006). In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

At the conclusion of the sentencing hearing the trial court discussed the factors that, in its view, indicated confinement was necessary. The trial court first found that the Defendant had an "extensive prior [misdemeanor] record," most of which was "directed toward irresponsibility." The trial court next found, based upon pictures entered into evidence of the pit bulls on the day they were seized, that the abuse in this case was "aggravated." The court found that the Defendant further "aggravated" the circumstances because, though she initially denied ownership of the dogs, she refused to surrender custody of the dogs until the veterinary clinic presented her with a $30,000 bill for services rendered

6

in care of the dogs. The trial court found that this behavior demonstrated further "irresponsibility." In summary, the trial court based its denial of alternative sentencing on the "aggravated" circumstances of the case, the Defendant's criminal record, and the Defendant's demonstrated "irresponsibility" in dealing with the Humane Society of Greater Kingsport after her pit bulls were placed within their care.

The evidence proves that the Defendant is a standard, Range I offender, and her prior convictions range from Class E misdemeanors to Class E felonies. Therefore, the Defendant is considered a "favorable candidate" for alternative sentencing. *See Carter*, 254 S.W.3d at 347. The trial court based its denial of alternative sentencing on the Defendant's extensive criminal record, misdemeanor convictions, the specific circumstances of the dogs' abuse in this case, and the Defendant's lack of cooperation with the Humane Society of Greater Kingsport. Because the presentence report establishes the Defendant had at least eight prior misdemeanor convictions, the record supports the trial court's finding that the Defendant had an extensive criminal record. Similarly, the record shows that the officer who initially investigated the Defendant for animal neglect gave the Defendant twenty-four hours to obtain adequate care for the animals on her own. The Defendant, however, chose to leave the animals as they were, chained up in sub-freezing temperatures, without food and water. When the officer returned and seized the animals, the male dog was unable to stand on his own, and frostbite required amputation of his tail. Thus, the record also adequately supports the trial court's determination that the facts of this case were egregious. Finally, the record shows that the Defendant initially denied that she owned the dogs but later refused to surrender ownership of the dogs until the veterinarian presented her with a $30,000 bill for their care. Therefore, the record supports the trial court's finding that the Defendant demonstrated "irresponsibility," which detracts from her "potential for rehabilitation." *See Nunley*, 22 S.W.3d at 289. We do not agree with the Defendant that her continued employment and payment of child support preponderates against the trial court's finding that the Defendant demonstrated a lack of potential for rehabilitation. In summary, the record adequately supports each of the trial court's factual findings. *See Ross*, 49 S.W.3d at 847.

The trial court, therefore, based its denial of alternative sentencing on the relevant sentencing principles of the 1989 Sentencing Act: the Defendant's criminal record, her lack of truthfulness, and the circumstances of her offenses. *See* T.C.A. § 40-35-103(A)-(C). We conclude that, because the trial court considered the pertinent facts of this case and the relevant sentencing principles, its denial of alternative sentencing is presumptively correct. *See* T.C.A. § 40-35-401(d); *Mencer*, 798 S.W.2d at 549. Also, we conclude that the concerns cited by the trial court also constitute "evidence to the contrary" of the Defendant's being a "favorable candidate" for alternative sentencing. *See* T.C.A. § 40-35-102(6). The Defendant has failed to carry her burden of proving her suitability for probation. T.C.A. § 40-35-303(b) (2006). *See* T.C.A. § 40-35-103(1), (5); *Kendrick*, 10 S.W.3d at 656; *Dowdy*, 894 S.W.2d

at 305. She is not entitled to relief on this issue.

## B. Imposition of Restitution

The Defendant contends the trial court erred when it ordered her to pay $15,816.76 in restitution. She argues first that she should not be held responsible for the Humane Society's costs for caring for the female dog's puppies, because they were conceived while in the Humane Society's care. She further argues that the Humane Society did not "provide sufficient information or accounting" to justify a per diem daily expenditure of $20 per dog. Finally, the Defendant argues the trial court failed to properly take into account her ability to pay when it set the restitution amount. She contends that, for the reasons stated above, the restitution amount was "unreasonable and inflated," and this Court should reduce the amount on appeal.

In response, the State does not address the Defendant's objections to the amount of restitution claimed by the Defendant. It acknowledges, however, that the trial court erred when it failed to take into account the Defendant's ability to pay when it set the amount of her restitution. The State concedes that the case should be remanded for the trial court to impose a restitution award that the Defendant can reasonably pay in light of her ability to pay.

When the defendant challenges the restitution amount ordered by the trial court, this Court will utilize a de novo standard of review with a presumption that the trial court's ruling was correct. T.C.A. § 40-35-401(d) (2006); *State v. Johnson*, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997). The purpose of ordering restitution is to compensate the victim and to punish and rehabilitate the defendant. *Johnson*, 968 S.W.2d at 885. "In determining the amount and method of payment or other restitution, the court *shall* consider the financial resources and future ability of the defendant to pay or perform." T.C.A. § 40-35-304 (d) (2006) (emphasis added); *State v. Bottoms*, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). After all, "[a]n order of restitution which obviously cannot be fulfilled serves no purpose for the appellant or the victim." *Johnson*, 968 S.W.2d at 886. There is "no formula for determining restitution," but the amount must be "reasonable" and "must be based upon the victim's pecuniary loss and the financial condition and obligations of the defendant; and the amount ordered to be paid does not have to equal or mirror the victim's precise pecuniary loss." *Johnson*, 968 S.W.2d at 886; *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). Pecuniary loss is defined as "(1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense." T.C.A. § 40-35-304(e).

8

A defendant ordered to pay restitution "shall be responsible for the payment of the restitution until the expiration of the sentence imposed by the court, and any payment or performance schedule established by the court shall not extend beyond the expiration date." T.C.A. § 40-35-304(g)(2); *Bottoms*, 87 S.W.3d at 108. "Any unpaid portion of the restitution ordered may be converted into a civil judgment." T.C.A. § 40-35-304(h)(1).

Individuals or organizations the State has charged with caring for a victim are victims under the restitution statute. *State v. Webb*, 130 S.W.3d 799, 836 (Tenn. Crim. App. 2003) (holding that a humane society that cared for animals seized from a defendant who committed animal cruelty is a victim because statute obligates state-sponsored shelters to care for such animals). An individual or organization that voluntarily assumes care of a victim, however, is not a victim for purposes of restitution. *See State v. Stanley A. Gagne*, No. E2007-02071-CCA-R3-CD, 2009 WL 331327, *2-3 (Tenn. Crim. App., at Knoxville , Feb. 11, 2009), *no Tenn. R. App. P. 11 application filed*. Here, because the Human Society of Greater Kingsport was charged with caring for the animals abused in this case, it is a proper victim within the meaning of the Sentencing Act. *See id*.

When a trial court orders a defendant to serve a sentence of incarceration, as opposed to probation, it lacks the jurisdiction to order a restitution payment plan, and, thus, may only order a total amount of restitution. *State v. Debbie Dawn Wales*, No. M2007-01232-CCA-R3-CD, 2008 WL 5191312 (Tenn. Crim. App. Dec. 11, 2008). Here the Defendant was ordered to serve her eighteen-month sentence in the TDOC, so the trial court did not have authority to order a restitution payment plan.

In summary, the process for determining a restitution amount is a two-step process: the trial court must first determine the pecuniary loss to the victim, and then it must determine how much of that amount the defendant can reasonably be expected to pay. *See Johnson*, 968 S.W.2d at 886; *State v. Wendell Gary Gibson*, No. M2001-01430-CCA-R3-CD, 2002 WL 1358711, at *3 (Tenn. Crim. App., at Nashville, June 24, 2002), *no Tenn. R. App. P. 11 application filed*.

In this case, after denying alternative sentencing, the trial court addressed the restitution it would order the Defendant to pay to the Humane Society for Greater Kingsport. The trial court expressed confusion over how to take into account the Defendant's ability to pay in its determination of an appropriate restitution amount:

> I don't know how to handle it. She's the one that put the [Humane Society] in the position of having to keep the dogs . . . .

> I don't know.

9

. . . .

Well, the only thing I know to fashion a thing on restitution, just make her pay according to her ability to pay, . . .

I don't know if I could ever come up with a formula. At the rate of her income and prior work history, I could keep her from nonpayment of restitution, keep her on probation for 20 years, probably . . . .

We can't use court resources for 20 years or 15 years. Well, she couldn't pay $1,000 a year. And her prospects don't look better than what she's doing now, far as income's concerned. She might win the lottery. I don't know. But I think it's . . .

It's just going to be an impossibility.

The trial court ultimately imposed the full restitution amount requested by the Humane Society of $15,816.76. The trial court explained, however, that it would specify on the judgments that, upon the Defendant's release from the TDOC, she would only be responsible for paying the restitution amount "according to her ability to pay."[1] The trial court also noted that it "would be reluctant to issue a probation violation at the end of eighteen months because she hadn't paid, because she's making seven bucks an hour and paying child support for [four] children." The trial court noted that, due to the Defendant's low-earning potential and her enormous child support obligation, the Humane Society likely would receive "zilch," even were the Defendant to obtain employment after being released from the TDOC.

The Defendant first claims that the amount claimed in daily per diem damages by the humane society was unreasonable and should not have been fully awarded. However, the Defendant failed to prove at trial that this amount was unreasonable by introducing evidence to refute the figures advanced in the humane society's itemized report of its expenditures. Therefore, her argument that the trial court's finding that the humane society's per diem expenditure was "unreasonable" must fail because the humane society's per diem expenditure is "substantiated by evidence in the record." *See* T.C.A. § 40-35-304(e). The trial court did not err in taking into account this figure in its calculation of the shelter's pecuniary loss.

The Defendant next argues that the trial court should not have included as part of the

_____

[1]The Defendant's judgments of conviction and sentence indeed include an instruction that the Defendant pay the imposed restitution amount "based upon [her] ability to pay."

10

shelter's pecuniary loss the expense of caring for the puppies born because the shelter caged the adult dogs together. As to this issue, we find instructive Ms. Davidson's testimony at sentencing that the shelter was already crowded, that the Defendant initially refused to forfeit ownership of the dogs to the shelter, and that abuse-case dogs must be kept separate from the general population. In light of these facts, we agree with the trial court the Defendant was "the one [who] put the [shelter] in the position of having to keep the dogs . . . ." Having reviewed the record as a whole, we conclude that cost of caring for the puppies is "substantiated by evidence in the record," and the trial court did not err when it included the cost in its calculation of the shelter's pecuniary loss. *See* T.C.A. § 40-35-304(e).

The Defendant's final claim, however, is meritorious. The Defendant argues the trial court erred when it failed to take into account her ability to pay in setting the amount of restitution. Because the trial court did not first determine how much of the shelter's pecuniary loss the Defendant could reasonably be expected to pay, this order does not comport with Tennessee Code Annotated section 40-35-304(e). *See Bottoms*, 87 S.W.2d at 108. As the trial court noted, because the Defendant had child support obligations for four children and a very low income-earning potential, she had only meager means of re-paying the humane society. Though the trial court attempted to take into account the Defendant's insolvency by providing that she only pay "according to her ability" upon her release from prison, this provision was inadequate. *See* T.C.A. § 40-35-401(d). Because the restitution order of $15,816.76 takes into account only the shelter's pecuniary loss and not the Defendant's ability to pay, we cannot presume it to be correct. *See Johnson*, 968 S.W.2d at 884. Accordingly, we remand the case to the trial court to consider the Defendant's financial resources and future ability to pay in determining the appropriate restitution in this case. T.C.A. § 40-35-304(d).

## III. Conclusion

After a thorough record of the review and applicable law, we conclude the trial court properly denied the Defendant alternative sentencing but erred when it set the amount of her restitution. As such, the judgment of the trial court ordering $15,816.76 in restitution is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE

11