IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

WESTERN DIVISION.

JACKSON, APRIL TERM, 1922.

CLARENCE TEMPLETON *v.* THE STATE.

(*Jackson.* April Term, 1922.)

1. **INFANTS.** Circuit court has jurisdiction over juvenile of fourteen charged with murder.

In view of Juvenile Law, sections 2, 9-11, providing for jurisdiction of juveniles, the circuit court has jurisdiction of a boy of fourteen years charged with murder, notwithstanding the juvenile had not first been taken into custody by the juvenile court and remanded to the sheriff of the county to be dealt with as provided by the criminal law. (*Post, pp.* 275-277.)

Acts cited and construed: Acts 1911, ch. 58.

Laws cited and construed: Secs. 2, 9-11.

2. **INFANTS.** That juvenile court had jurisdiction in manslaughter did not relieve circuit court from charging on manslaughter in murder trial of infant.

That the juvenile court had jurisdiction of juveniles in all crimes less than murder in the first and second degree did not relieve trial judge, in a prosecution for murder, from charging on the offenses of voluntary and involuntary manslaughter, and its refusal to so charge was error, and, notwithstanding defendant's

(272)

Templeton v. State.

claim that he was not guilty of any offense at all, he was prejudiced by such refusal. (*Post, pp.* 277-281.)

Case cited and approved:   Jones v. State, 128 Tenn., 497 .

Case cited and distinguished:   Frazier v. State, 117 Tenn., 441.

3. **CRIMINAL LAW.** Statement of accused, after shooting, that he did not intend to shoot deceased, inadmissible.

In a prosecution for murder, the refusal of testimony to the effect that defendant told witness, just as they got into the road from the house where the shooting occurred, the house being only three or four steps from the road, that he did not intend to shoot deceased, was inadmissible as a statement made shortly after the shooting as a part of the transaction. (*Post, p.* 281.)

FROM TIPTON.

Error to the Criminal Court of Tipton County.—HON. R. B. BAPTIST, Judge.

H. W. OWEN, for plaintiff in error.

WM. H. SWIGGART, JR., Assistant Attorney-General, for the State.

MR. L. D: SMITH, Special Justice, delivered the opinion . of the Court.

The plaintiff in error (hereinafter called defendant) was convicted in the criminal court of Tipton county for murder in the second degree for killing one Bessie Lee Elcan. The record shows that the deceased was killed by a pistol ball fired from a pistol in the hands of the defendant. The State contends that the pistol was purposely

146 Tenn.—18

fired, while the defendant contends that it was accidentally and innocently discharged.

The plaintiff in error was only fourteen years of age, and the deceased was about the same age. The killing occurred at the home of a chum of the deceased. This chum, Verna Lanier, is the principal witness for the State. According to her testimony, and that of some other State witnesses, the defendant was very much in love with the deceased and made the statement that he would kill anybody who went with her. She says that the defendant and James Cotton came over to her house where she and the deceased were sitting on the porch, and that the defendant had a pistol which he took out and was playing with; that he threw the pistol into deceased's lap, and that afterwards he got the pistol back and took the cartridges out and put them back several times; that she then went back into the house, and while she was in the house she heard the defendant and the deceased quarreling, the defendant fussing about not getting to go home with her from the concert; that he said to her, "If you don't stop laughing, I will shoot you;" that about this time the pistol fired; that when she got out on the porch the deceased said, "Clarence shot me for nothing, because I was laughing at him." The only other persons present when the killing occurred were the defendant and James Cotton. The State's case that the killing was done purposely rests upon proven threats and this testimony of the Lanier girl. The defendant says that the deceased and Verna Lanier were to take a part in a play of some kind that was to be given in connection with the school which they were attending, and that they had asked him to get them a pistol, as the part they were to take was that of cowgirls in a western drama, requiring the wearing of pistols, and that he had gone down to the

house with James Cotton for the purpose of carrying this pistol down there. He says that he had unbreached his pistol and that all the cartridges had fallen out on the floor, as he supposed—one had not, but he thought the pistol empty—and when he went to put the pistol back together it accidentally fired and killed the girl.

One contention of the defendant is that, he being under the age of sixteen years, the circuit court was without jurisdiction to try him, under the circumstances, by reason of the provisions of the juvenile law. Chapter 58, Acts of 1911. The circumstances made the basis of this contention are that the defendant was arrested on a warrant sworn out before a justice of the peace and bound over to the circuit court, and in that court indicted and tried, with the result heretofore stated. It is not contended that the circuit court is without jurisdiction to try juvenile offenders for murder, but it is contended that no such charge can be preferred unless the juvenile has first been taken into custody by the juvenile court and remanded to the sheriff of the county, to be dealt with as provided by the criminal laws of the State. This contention is based upon sections 2, 9, and 11 of the Juvenile Act. Section 2 provides that the county judge or chairman of the county courts of the several counties of the State shall have original exclusive jurisdiction of all cases coming within the terms of this act. Section 9 provides, among other things, that any child who shall have committed a misdemeanor or felony, and who shall have been found by the court to be a delinquent child, incorrigible, and incapable of reformation or dangerous to the welfare of the community may, in the discretion of the court, be remanded to the proper court of the county in which such crime was committed, and be

proceeded against and tried for such crime, and if found guilty be subject to judgment therefor in the same manner as if he had been over the age of sixteen. This section contains a provision in the following words:

"Provided, that if upon the investigation of any cause coming under the terms of this act, the judge of the juvenile court shall conclude that there is probable cause to believe that the child has been guilty of the crime of rape, murder in the first degree, or murder in the second degree, in that event the court shall at once dismiss said cause from its courts and assume no further jurisdiction thereof than to at once remand said child to the sheriff of the county, to be dealt with for such, his alleged offense, as provided in criminal laws of the State."

Section 10 provides that when a child under sixteen years is arrested, instead of being taken before a justice of the peace, or held to bail, or incarcerated for his appearance before any criminal court, it shall be taken directly before the juvenile court; or if the child is taken before a justice of the peace, or any other court having jurisdiction over his offense, it shall be the duty of such justice of the peace or court to transfer the case to the juvenile court, and the case disposed of by that court as if the child had been brought before it upon petition, as provided in the act. Section 11 prohibits any court from committing a child coming under the provisions of this act to any jail or lockup for punishment for any offense committed under this act.

It is quite clear from the provisions of the act to which we have referred that the juvenile court is entirely without jurisdiction or power to try or make any disposition of a case against a juvenile where the offense is that of rape

Templeton v. State.

or murder.  It follows, therefore, that section 2 of the act, which gives the county judge or chairman of the county court exclusive jurisdiction of all cases coming within the terms of this chapter, does not apply to cases of rape and murder, as such cases are not within the terms of the act at all.  This being true, the act does not prohibit the arresting of a child under sixteen years old upon a criminal warrant by a justice of the peace, or his indictment by a grand jury and his trial in the circuit court of the offenses of rape and murder.  The provision in the act which authorizes and requires the juvenile court to remand the child when it shall appear that there is probable cause to believe it guilty of the crime of rape or murder, to dismiss the cause and remand the child to the sheriff of the county to be dealt with, is intended only to facilitate the jurisdiction of the criminal court over such offenses where the child has been arrested under the provisions of the act. This provision of the act strengthens the construction that the circuit court alone has jurisdiction of offenses of rape and murder by juveniles, and it in no way repeals or modifies the general provision of the criminal law with respect to offenses of this character.  We conclude, therefore, that the circuit court had power and jurisdiction to hear and determine this case.

In another assignment it is complained that the trial judge committed error in failing and refusing to instruct the jury with respect to the law of voluntary and involuntary manslaughter.  It is said in the argument of counsel for the defendant that the court's failure and refusal to do this was based upon the conception of the trial judge that under the Juvenile Act his court has no jurisdiction to try the defendant for the offenses of voluntary and in-

voluntary manslaughter, and that therefore there was no duty to instruct the jury upon the subject of these offenses. This conception is unsound. The indictment charged the defendant with murder in the first degree, and this necessarily embraced charges of voluntary and involuntary manslaughter. The statute required him to give in charge to the jury the law of these lesser grades of homicide. The fact that the juvenile court had exclusive jurisdiction of these offenses did not relieve him of that duty. It may be conceded that he could not punish the defendant for such offenses; but, if the defendant was guilty of either one of these lesser grades of homicide, he was not guilty of murder, and it was essential for the jury, in determining whether he was guilty of murder in the first or second degree, to know the law with respect to the lesser grades of homicide, and therefore the mere fact that the circuit court might not have jurisdiction to deal with the offender in the event the jury found him guilty of the lesser grades of the offense, it was nevertheless his duty to explain the law to the jury in order that they might apply the law in determining whether he was guilty of any one or none of such offenses. He would then deal with the case according to the verdict of the jury. We are not called upon in this case to determine just what his duty would have been in the event the jury had found the defendant guilty of manslaughter, but we do determine that the court was not excused from complying with the statute which requires him to give in charge to the jury the law of these lesser offenses by reason of the fact that the juvenile court had exclusive jurisdiction to deal with a juvenile offender found guilty of voluntary or involuntary manslaughter.

It is contended by the attorney-general that there was no error in the action of the trial judge in failing and refusing to charge the jury with respect to the law of voluntary and involuntary manslaughter, upon the theory that under the evidence in this case it is clear and certain that the defendant was not prejudiced by this failure and refusal of the trial court. We are unable to agree with this contention of the State. The principle by which we are to be governed in determining this question was stated by this court in *Frazier* v. *State,* 117 Tenn., 441, 100 S. W., 97, as follows:

"The better practice to be pursued by trial judges undoubtedly is for them to charge upon all offenses embraced in the indictment, because whenever there is any doubt that the defendant has been prejudiced by such omission it will be error, for which it will be the duty of this court to reverse the judgment and remand the case for a new trial. It is only in cases where it is absolutely certain that the omission was not prejudicial to the defendant, in the trial court, that a charge omitting instructions upon every offense contained in the indictment can be sustained."

See, also, *Jones* v. *State,* 128 Tenn., 497, 161 S. W., 1016.

In the latter case it was held mandatory for the trial judge to charge the jury, under an indictment charging the defendant with murder in the first degree, upon murder in the second degree; and with respect to the lower grades of homicide, the court felt constrained to repeat the precautions which we have just quoted from the case of *Frazier* v. *State.*

The state's argument is that the defendant was not prejudiced because he testified, and his counsel insisted

for him, that he was not guilty of any offense at all, while the state contended he was guilty of murder and not manslaughter. Under our system the jury is the judge not only of the facts but of the law as well, the court being only a witness as to the law, and it is his duty to tell the jury what the law is, applicable to any phase whatever of offenses charged against a defendant. He cannot be excused from doing so upon the ground merely that the defendant insists he is not guilty of anything and the State that he is guilty of a higher offense. If the facts are at all susceptible of the inference of guilt of the lesser grades of the offense, the jury must be given the law with respect thereto. The defendant's testimony and that of the other witness introduced by him tended to show that the act was purely accidental, and there was evidence tending to show the existence of passion. Whether this passion was aroused by any act sufficient to reduce the grade of the offense was for the jury to determine. There was certainly evidence tending to show that the defendant was engaged in the unlawful act of carrying a pistol at the time it was discharged, and so there was gross negligence and disregard of the rights of others in the method in which the defendant was handling the pistol. Although the jury may have concluded that the discharge of the pistol was purely accidental, yet from this evidence the jury could have concluded that the defendant was guilty of involuntary manslaughter. Therefore it cannot be said that it is absolutely certain that the omission of the trial judge to instruct the jury upon the subject of manslaughter was not prejudicial to the defendant. It results, therefore, that the assignments of error based upon the failure and refusal of the trial judge to instruct the jury upon these subjects must be sustained and a new trial awarded.

Templeton v. State.

Since the case must be remanded for a new trial, the merits of the case upon the preponderance of the evidence is not passed upon by us. There are, however, assignments of error relating to the admission of testimony which it is proper to pass upon.

It is complained that the trial judge excluded the testimony of James Cotton to the effect that the defendant told him, just as they got into the road from the house, the house being only three or four steps from the road, that he did not intend to shoot Bessie Lee. This evidence was clearly inadmissible. While it is true that the statement was made very shortly after the shooting, it was not a part of the transaction; it was a statement with respect to it after it had occurred. It is strenuously insisted by the defendant that it ought to have been admitted in view of the admission of the testimony of the Lanier girl as to a statement made by the deceased to the effect that the defendant shot her for nothing and because she was laughing at him. It is not contended that this statement of the defendant which the court excluded was made in response to the statement of the deceased testified to by the Lanier girl. There was no objection made by the defendant to the testimony of the Lanier girl, and whether its admission was proper or not cannot render the testimony of the witness Cotton as to the statement of the defendant competent. This assignment of error is therefore overruled.

For the reasons hereinbefore stated, the judgment of conviction will be reversed, and the cause remanded to the circuit court for a new trial.