**STATE of Tennessee, Appellee,**

v.

**William V. ALCORN, a/k/a Alcorn Vaughn, Terry W. Cliburn, Wilberto O'Quendo, and Lonnie D. Patterson, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

Sept. 4, 1987.

Permission to Appeal Denied by Supreme Court Nov. 30, 1987.

John G. Doak, Nashville, for defendant Alcorn.

David E. High, Nashville, for defendant Cliburn.

Lionel R. Barrett, Jr., Doug Love, Nashville, for defendant O'Quendo.

Ann B. Steiner, Mary A. Parker, Nashville, for defendant Patterson.

W.J. Michael Cody, Atty. Gen. & Reporter, Charles E. Bush, Asst. Atty. Gen., John Zimmermann, Asst. Dist. Atty. Gen., W.

Edward Barnard, Asst. Dist. Atty. Gen., Nashville, for appellee State.

## OPINION

BYERS, Judge.

The four defendants were tried by a jury on charges of conspiracy to sell or deliver, and possession with intent to sell or deliver, 30 grams or more of a substance containing cocaine. Upon conviction, the trial court imposed sentences in accordance with the Class X felony provisions of the Drug Control Act.

On appeal the defendants say the Class X provision is constitutionally defective in various ways, and say the trial court should have instructed the jury on lesser included offenses. In addition, appellant Cliburn says his trial should have been severed; appellant Patterson says the jury was tainted by publicity about the drug related death of a prominent athlete; and appellant O'Quendo says the evidence is insufficient to support his conspiracy conviction.

The judgments are affirmed.

The prosecution of this case resulted from an undercover operation initiated by a paid government informant. The state's proof was presented through the testimony of the informant, tape recorded conversations with defendants Patterson and Cliburn, and the testimony of surveillance and arresting officers.

The transaction was initiated when the informant contacted Patterson in an effort to find a mutual acquaintance known to have access to cocaine. When this man could not be located, Patterson offered to arrange a deal through his cousin. After several aborted attempts the three met at an auto dealership in Nashville, where Patterson and his cousin, Cliburn, worked. A number of other officers waited, and listened, nearby. According to the informant, Cliburn made several phone calls to set up the transaction, although these calls were not recorded.

Shortly, the three left in separate cars, with the informant following the others. After a drive of some distance, and with surveillance cars following, the men arrived at defendant Alcorn's apartment and Patterson and Cliburn entered. Alcorn emerged and drove away in a small silver colored car, but returned within a short time. Patterson and Cliburn reported that he was to meet a man in a Corvette, and later reported the supplier had called to say he did not recognize Alcorn's car. Alcorn returned empty-handed, and after a delay he left again, this time in Cliburn's vehicle. Officers saw the car, with headlights out, turn a corner out of their view. When the car emerged again, backing into the street and returning to the apartment parking area, it was followed closely by a Corvette driven by defendant O'Quendo. O'Quendo parked briefly, sounded his horn, then drove back to the street and parked.

Meanwhile, the informant and Patterson entered Alcorn's car and examined the cocaine. When the informant returned to his own car for the purchase funds, officers moved in and made the arrests. A bag of white powder was found on the driver's side of Alcorn's car. A small quantity of white powder was found on O'Quendo's person.

Test results, which were not disputed, showed the total weight of the substance in the bag to be 82.2 grams and the cocaine content to be 32.1 per cent. The amount of pure cocaine was calculated at 26.39 grams.

Patterson presented an entrapment defense. He testified that he had assisted in finding a cocaine source, but claimed he was threatened and harassed by the informant.

O'Quendo testified he was merely an innocent bystander, waiting in an out-of-the-way place to meet his girl friend. He admitted he knew Alcorn, but denied any knowledge of the drug sale. The woman, who lived in Harriman at the time, corroborated his testimony. O'Quendo further admitted that several months before these events he had left his job as a restaurant manager and was not employed, and that he had purchased the Corvette in Harriman the day before the arrest, and had bought a small quantity of cocaine in Oak Ridge for personal use.

Alcorn presented no defense. Cliburn did not testify, but elicited testimony from Patterson that he, Cliburn, acted only to help his cousin out and that he had no monetary, or other, interest in the transaction. His theory of defense was that, at most, the proof showed he introduced co-defendants Patterson and Alcorn and was motivated solely by concern for his cousin's welfare. He further argued that because he remained in the apartment during the actual delivery of the cocaine, he was in no position to aid and abet.

The principal issues on appeal concern the validity of the statute that imposes significantly greater punishment for large scale dealing in cocaine, a Schedule II substance. T.C.A. § 39-6-417(a)(1)(B) prohibits possession with intent to sell "[a] controlled substance classified in schedule II" and provides for a prison term between four and ten years and a fine up to fifteen thousand dollars. The statute makes no reference to the weight of the substance.

T.C.A. § 39-6-417(c)(1)(E) (Supp.1986) is worded differently and makes it a Class X felony to possess with intent to sell, or to conspire to do so, "[t]hirty grams or more of any substance containing cocaine." A violation of this section is punishable by a term between ten years and life and a fine up to two hundred thousand dollars. T.C. A. § 39-6-417(c)(2).

The defendants were indicted under the Class X provision. When discovery disclosed the amount of pure cocaine seized was less than thirty grams, they moved to dismiss the Class X portion of the charge. The motion relied on an unpublished opinion of this Court in *State v. Larry Holley*, No. 6 (Tenn.Cr.App., Jackson, March 24, 1983).

The *Holley* case involved a catchall provision that dealt with "[t]wo hundred (200) grams or more of *any controlled substance* classified in schedules I or II" and not otherwise included in the Class X list. The substance at issue was seized in pill form, and the state failed to prove, by quantitative analysis or other means, the amount of pure scheduled substance within the pills. We held that "any controlled substance" referred to the pure form of the drug itself and reduced the sentence.

Shortly after the *Holley* decision, the Legislature revised subsection (c) and changed the wording of the catchall provision to conform to the language of the other Class X prohibitions. It now refers to "any substance containing [an unlisted substance]," as does the provision governing the possession of cocaine in this case. *Compare* T.C.A. § 39-6-417(c)(1)(L) (Supp. 1986) *with* T.C.A. § 52-1432(c)(1)(H) (Supp. 1982).

■ The trial court found, as do we, a clear Legislative intent to avoid the result in the *Holley* case and to include the weight of the cutting agent or medium along with the weight of the scheduled substance. This construction is consistent with common usage also. The word "contain" may mean "include," "comprise," or "consist of wholly or in part." *See* The American Heritage Dictionary of the English Language (1973); Webster's Third New International Dictionary (1976).

■ Defendants then moved to dismiss on grounds they were denied due process, asserting the phrase "any substance containing cocaine" does not give fair warning of the proscribed conduct and allows the prosecution unguided discretion to charge a Class X offense.

Similar issues were raised in *State v. Ash*, 729 S.W.2d 275 (1986), which dealt with Class X possession of LSD. We concluded that given the usual forms in which the drug is marketed and consumed, the phrase "any substance containing LSD" refers to the agent that contains the LSD as well as the pure form of the drug and "a person of ordinary intelligence would have no difficulty in discerning the proscribed activity." *Id.* at 280. This is the essence of the fair-warning requirement. *See U.S. v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

We hold that subsection (c)(1)(E) is equally clear. Indeed, this construction provides better warning than a proscription on the amount of pure cocaine. The accused is much more able to judge the amount of the

preparation he is dealing with than to perform a quantative analysis.

■ The second aspect of the issue is whether the statute provides minimal guidelines for law enforcement. A statute may be held void on its face if it leaves to the "personal predilections" of an officer or prosecutor to determine whether conduct is illegal. *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

On this point it is argued the Class X statute might be applied to any amount of cocaine since the drug will almost always be contained in, or enclosed by, some other object (a bag, a fruit jar, even an automobile), that weighs at least thirty grams.

The defendants may not rely on possible applications that did not occur in this case. Unless the statute substantially affects the exercise of first amendment privileges or other fundamental liberties, or is vague as to all its applications, the challenge is limited to the application of the statute to their own conduct. This distinction is discussed by the majority and the dissent in the recent case of *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). *See also State v. Wilkins,* 655 S.W.2d 914, 917 (Tenn.1983). Moreover, our construction of the statute would seem to preclude such possibilities.

■ Defendant Patterson insists the Class X provision denies him equal protection of the law in providing disparate treatment to persons who possess the same or similar amount of pure cocaine depending on the amount of unscheduled "substance" with which the drug is mixed. He points out that possession of 29 grams of pure cocaine incurs less punishment than does, e.g., possession of 10 grams of cocaine cut with 20 grams of innocuous powder, even though the former case may suggest drug trafficking at least as serious as the latter.

Such under-inclusiveness is permissible so long as the statute rationally promotes a legitimate governmental interest. *See State v. Hinsley,* 627 S.W.2d 351 (Tenn. 1982). A criminal statute regulating the possession and sale of illegal drugs is not subject to strict scrutiny and need not be precisely tailored to address only, or all, those situations that indicate larger scale drug dealing. Although upon conviction the accused will indeed lose his liberty, the activity curtailed by the statute is not his freedom of movement, but trafficking in prohibited drugs, an activity which has no independent constitutional protection.

In short, section 39–6–417(c)(1)(E) does not deny the defendant equal protection of the laws.

Defendants all insist they were entitled to their requested instructions on attempt to commit a felony and on possession and conspiracy under T.C.A. § 39–6–417(a)(1)(B). We agree that both of these offenses are logically included in the Class X offense and in an appropriate case the jury should be so charged.

■ Defendants rely on *Templeton v. State,* 146 Tenn. 272, 280, 240 S.W. 789, 791 (1922), for its statement, "the jury is the judge not only of the facts but of the law as well." But in *Templeton* the circumstances of a homicide were sharply disputed, and there was evidence to support each of the lesser included offenses. The Court went on to say, "If the facts are at all susceptible of the inference of guilt of the lesser grades of the offense, the jury must be given the law with respect thereto." *Id.* The rule has been restated many times. *See, e.g., Johnson v. State,* 531 S.W.2d 558 (Tenn.1975); *Strader v. State,* 210 Tenn. 669, 362 S.W.2d 224 (1962).

We find no such facts or inferences in this case. There was no dispute at trial about the weight of the substance seized. There was no contrary evidence, and cross-examination cast no doubt on the expert testimony. Defendants merely wished to persuade the jury that the Class X provision required proof of 30 or more grams of pure cocaine. But that was a question of law, not of fact, and it had been decided by the court on a pre-trial motion.

Similarly, there was no evidence that any defendant attempted, but failed, to possess the illegal substance. Patterson and Cliburn denied criminal intent, and O'Quendo denied all knowledge of the transaction.

Alcorn presented no proof. On this record, the trial court was not required to charge the lesser offenses.

■ We reject defendant Cliburn's claim that he was entitled to a separate trial because the proof against his co-defendants was greater than the case against him and because his defense was irreconcilable with Patterson's entrapment defense. A defendant is entitled to a severance if "it is deemed appropriate to promote a fair determination of the guilt or innocence of one or more defendants." Tenn.R.Crim.P. 14(c)(2).

In this case, all the evidence would have been admissible in a separate trial to establish a conspiracy, and most of it would have been admissible to show Cliburn's intent, knowledge, and participation as an aider and abettor. In addition, the two defenses are not mutually exclusive. *See United States v. Davis*, 623 F.2d 188 (1st Cir.1980); *United States v. Salomon*, 609 F.2d 1172 (5th Cir.1980). Of course, Patterson's testimony was damaging because it corroborated the informant's account of Cliburn's telephone arrangements, but a juror could consistently conclude that neither Patterson nor Cliburn had the requisite criminal intent. Moreover, Patterson's testimony would have been admissible in a separate trial. The fact that it might not have been available is not grounds for a severance. *See State v. Hopper*, 695 S.W.2d 530 (Tenn. Cr.App.1985).

Patterson's issue concerning adverse publicity is waived. The record shows this matter was raised several times during the trial, principally by Cliburn's attorney. On the third day of trial, that attorney proposed the trial court question and admonish the jury on the matter. Patterson made no objection to this course of action and did not move for a mistrial. Having ac-

quiesced at trial, he may not assert this as error on appeal.

Finally, we have examined the evidence of O'Quendo's participation in the conspiracy. O'Quendo argues that at most the circumstantial evidence shows he "gave" some cocaine to Alcorn; that this was simply a transfer from one person to another, and there is no evidence he intended to join the "overall conspiracy."

■ In a serial conspiracy an individual may deal with only one of several other conspirators and still be a part of the combination. "If there is a concert of design there need not be participation in every detail of its execution or knowledge of the scope of the conspiracy." *Cline v. State*, 204 Tenn. 251, 319 S.W.2d 227 (1959).

■ It is irrelevant that O'Quendo may not have known the informant, or Patterson, or Cliburn or their roles in the scheme. The proof, though circumstantial, shows that he fronted a large quantity of cocaine to Alcorn and waited nearby for the proceeds of a sale to a third person. The jury could rationally, and beyond a reasonable doubt, conclude that O'Quendo entered into an agreement with Alcorn to sell or deliver cocaine, or to possess with the intent to do so, and that both he and Alcorn committed an overt act to accomplish that end. The proof is sufficient to establish all the elements of the offense.

O'BRIEN, J., and WILLIAM S. RUSSELL, Special Judge, concur.