# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 28, 2014 Session

## STATE OF TENNESSEE v. DEVIN TORQUIN WATKINS

**Appeal from the Criminal Court for Knox County**
**No. 96749    Bob R. McGee, Judge**

**No. E2013-00420-CCA-R3-CD - Filed April 3, 2014**

Devin Torquin Watkins ("the Defendant") was convicted of two counts each of the sale of .5 grams or more of a substance containing cocaine within 1,000 feet of a public park and the delivery of .5 grams or more of a substance containing cocaine within 1,000 feet of a public park. The trial court merged the Defendant's convictions for delivery of cocaine into his convictions for sale of cocaine and sentenced the Defendant to a total effective sentence of fourteen years' incarceration. In this direct appeal, the Defendant contends that the statute under which he was convicted is unconstitutionally vague and that the evidence was not sufficient to support his convictions. Upon our thorough review of the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

John M. Boucher, Jr., Knoxville, Tennessee, for the appellant, Devin Torquin Watkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Randall Nichols, District Attorney General; and Philip Morton and Sean McDermott, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

A Knox County Grand Jury indicted the Defendant on two counts each for the sale of .5 grams or more of a substance containing cocaine within 1,000 feet of a public park and the delivery of .5 grams or more of a substance containing cocaine within 1,000 feet of a public park. See Tenn. Code Ann. §§ 39-17-417, -432 (2010). The Defendant proceeded to a jury trial on January 9, 2012.

Richard Langster testified that, in January 2011, he was working as a confidential informant for Officer Michael Geddings of the Knoxville Police Department ("KPD"). Langster agreed to participate in a controlled purchase of narcotics from the Defendant, whom Langster knew only by his nickname, "Black." Langster testified that officers searched him thoroughly before the purchase. Officer Geddings gave him one-hundred dollars and instructed him to purchase "crack or weed or whatever." Langster went to a residence where he knew the Defendant commonly sold drugs, and the Defendant answered the door. The Defendant told Langster that he had some crack, but "it wasn't hardening right." Langster asked him if it was "hard enough to buy," and the Defendant answered that it was. At that point, Langster purchased an "eight ball" of crack from the Defendant. After the purchase, he gave the crack to officers and once again was searched to confirm that he did not have any remaining money or drugs. The audio and video recordings of the purchase were played at trial and admitted into evidence.

The following day, at the direction of Officer Geddings, Langster went back to the residence to attempt to make another controlled purchase of "some powder [cocaine] and some marijuana." Langster testified that he was wearing audio and video recording devices during this purchase as well. On this second occasion, Langster purchased three bags of powder cocaine from the Defendant for ninety dollars as well as some marijuana from another individual at the house. Similarly to the day before, Langster was searched before and after the purchase. The audio and video recordings of the second transaction also were played at trial and admitted into evidence.

On cross-examination, Langster admitted that he was an "[o]ff and on" drug user around the time he made the purchases from the Defendant. However, he testified that he was not using any type of drugs while working with the KPD because Officer Geddings had forbidden him from "using any type of drugs or doing anything illegal" during the "process."

Officer Michael Geddings testified that, at the time of the events in question, he was working as part of the KPD's "Repeat Offender Squad," which "target[ed] street-level narcotics." Officer Geddings testified that he employed Langster as a confidential informant to make some controlled drug purchases at 1613 Lombard Place. He testified that, in addition to audio and video recording devices, Langster also was wearing a device that transmitted audio to Officer Geddings while he listened to the events in real time from a nearby, unmarked police vehicle.

Officer Geddings testified that, as a result of Langster's first purchase, he recovered "a plastic baggie which inside of it had a – a white almost a waxy-type substance that was stuck to a piece of Styrofoam." He testified that, "the actual substance was almost stuck onto the Styrofoam." Therefore, when he weighed the substance, he "tore off as much excess Styrofoam as [he] could and just left the Styrofoam that was actually attached to the substance." He weighed the substance at 4.1 grams which he characterized as a "gross weight" because it "t[ook] into account the weight of the baggie as well." He also performed a field test on the substance, and the test indicated positive for the presence of cocaine. Langster's second purchase yielded "three baggies with [a] white powder substance and [a] baggie with [a] green leafy substance." Officer Geddings field-tested the powder, and it also indicated positive for the presence of cocaine. All of the substances were then sealed and sent to the Tennessee Bureau of Investigation ("TBI") to be analyzed.

Shortly after these controlled buys, Officer Geddings executed a search warrant for the residence at 1613 Lombard Place. The Defendant was not present at the residence during that search. At a later date, Officer Geddings received a tip from Langster that the individual he knew as "Black" was driving a specific vehicle at a specific location. Officer Geddings testified that, shortly after receiving this tip, he and KPD Officer Stryker located the vehicle and conducted a traffic stop. Officer Geddings stated that the Defendant was riding in the rear passenger seat, and Officer Geddings "immediately identified" him from the video recordings of the earlier controlled purchases. The Defendant had marijuana on his person, and Officer Geddings issued him a citation. Subsequently, Officer Geddings prepared a photo-array, and Langster positively identified the Defendant as the person whom he knew as "Black" and from whom he had purchased crack and powder cocaine.

On cross-examination, Officer Geddings clarified that the three bags of powder cocaine weighed a total of 1.7 grams.

Sharon Norman testified that, at the time of the events in question, she was working as a forensic drug chemist for the TBI. Norman identified the sealed envelopes submitted to the TBI by Officer Geddings containing the crack and powder cocaine as those which she had tested previously. According to Norman, after removing the crack cocaine from its

packaging, it weighed 1.3 grams. She tested the substance and confirmed that it was "cocaine base." She also tested each of the three bags of powder cocaine and confirmed that they also contained cocaine. The total weight of the of powder cocaine was 1.1 grams.

On cross-examination, Norman confirmed that crack often contains "cutting agents" in addition to cocaine, such as baking soda or baking powder. She therefore acknowledged that the actual amount of cocaine contained in a substance possibly could be less than the overall weight; however, she "did not perform a quantitation on this [sample]." Regarding the powder cocaine, she confirmed that it was cocaine, but she was "unable to determine the salt form" because it was "so heavily cut." Therefore, she testified that she could not confirm the precise amount of cocaine contained in the powder substance, although she stated that the amount was too much to be merely "contamination" or "residue."

Trevor McMurray testified that he worked for the Knoxville Geographic Information System. He prepared a map which showed that the residence at 1613 Lombard Place was 562 feet from Babe Ruth Park.

Mike Harris testified that he worked for the City of Knoxville Parks and Recreation Department and identified Babe Ruth Park on the map as a City of Knoxville park.

At the conclusion of the State's proof, the defense moved for a judgment of acquittal, which the trial court denied. The Defendant chose not to testify and presented no proof. After deliberating, the jury convicted the Defendant of two counts each of the sale of .5 grams or more of a substance containing cocaine within 1,000 feet of a public park and the delivery of .5 grams or more of a substance containing cocaine within 1,000 feet of a public park. The trial court merged the Defendant's convictions for delivery of cocaine into his convictions for sale of cocaine and sentenced the Defendant to fourteen years' incarceration for each conviction. The trial court ordered that the sentences run concurrently. The Defendant filed a motion for new trial, which the trial court subsequently denied. In this direct appeal, the Defendant contends that Tennessee Code Annotated section 39-17-417 is unconstitutionally vague and that the evidence was not sufficient to support his convictions.

## Analysis

*Tennessee Code Annotated § 39-17-417*

The Defendant asserts that Tennessee Code Annotated section 39-17-417, which designates the sale or delivery of .5 grams or more of "any substance containing cocaine" as a Class B felony, is unconstitutionally vague and that "determining the length of [a] sentence

in accordance to the weight of any cocaine and its carrier mediums and cutting agents combined" amounts to a denial of due process. See Tenn. Code Ann. § 39-17-417(c)(1).

This Court previously has acknowledged that the statutory language of "substance containing" is not "plain and unambiguous." State v. Magness, 165 S.W.3d 300, 304-05 (Tenn. Crim. App. 2004). However, this Court concluded that, in drafting this language, our General Assembly's "intent was to follow the market oriented approach." Id. at 307-08. That is, "the substance must be *marketable* or *consumable* in order to weigh it." Id. at 307; see also 7 Tenn. Prac. Pattern Jury Instr. T.P.I-Crim 31.13 ("In deciding the weight of the substance alleged to contain [cocaine], the jury may not consider the weight of any material that must be separated or removed from the controlled substance before the controlled substance can be used or consumed.). This Court first addressed this issue in State v. Ash, 729 S.W.2d 275, 280 (Tenn. Crim. App. 1986), in which the defendant contended that the phrase "substance containing" was unconstitutionally vague with respect to his conviction for possession of LSD. In affirming the defendant's conviction, this Court stated:

> Given the nature of the drug LSD, it is necessary that the statute not require a particular weight of the pure substance. LSD is rarely, if ever, sold in the "street" marketplace in its pure form. It is ordinarily sold in tablets, on dots of paper, or on some other agent. The dosage is measured in micrograms. Thus, it would be impossible to define with any precision the exact weight of pure LSD which constitutes criminal possession. Rather, it is the weight of the substance (agent) that can be defined, and the legislature has done so in the statute.

Id.

Similarly, in State v. Alcorn, 741 S.W.2d 135, 138 (Tenn. Crim. App. 1987), this Court addressed the same issue in the context of the weight of a "substance containing" cocaine. In Alcorn, this Court confirmed that the interpretation of the "substance containing" language was necessarily within the context of "the usual forms in which the drug is marketed and consumed." Id. In so holding, the Court concluded that the legislative intent of the language "any substance containing cocaine" was to "include the weight of the cutting agent or medium along with the weight of the scheduled substance." Id. In reaching this conclusion, the Court reasoned that "this construction provides better warning than a proscription on the amount of pure cocaine. The accused is much more able to judge the amount of the preparation he is dealing with than to perform a quantative analysis." Id. at 138-39.

Therefore, we reject the Defendant's argument that Tennessee Code Annotated section 39-17-417 is unconstitutionally vague and that the weighing of a substance containing cocaine along with any cutting agents or carrier medium amounts to a denial of due process. Tennessee courts consistently have followed the "market oriented approach" with respect to the weight of controlled substances. Magness, 165 S.W.3d at 307-08. The relevant weight under the meaning of the statute is that of a substance containing cocaine, including any cutting agents or carrier mediums, as long as the substance is in its marketable or consumable form. Accordingly, the Defendant is entitled to no relief on this issue.

*Sufficiency of the Evidence*

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Furthermore, it is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

Although the trial court merged the Defendant's convictions for sale and delivery of cocaine, we will consider the sufficiency of the evidence as to both convictions in order to facilitate potential further appellate review. In Tennessee, "[i]t is an offense for a defendant to knowingly . . . [d]eliver a controlled substance[] [or] [s]ell a controlled substance." Tenn. Code Ann. § 39-17-417(a)(2),(3) (2010). Tennessee statute defines "deliver" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6) (2010). Cocaine is classified as a Schedule II drug, see Tenn. Code Ann. § 39-17-408(b)(4) (2010), and sale or delivery of .5 grams or more of "any substance containing cocaine" is a Class B felony. See Tenn. Code Ann. § 39-17-417(c)(1).

Langster testified that he participated in controlled purchases of crack cocaine and powder cocaine from the Defendant in conjunction with the KPD. Both Langster and Officer Geddings testified that, during these purchases, Langster was fitted with video and audio recording devices, and the recordings were played at trial and admitted into evidence. After these purchases, Langster also identified the Defendant in a photo-array as the person from whom he purchased crack and powder cocaine. Officer Geddings testified that, during his initial field tests, the substances that Langster purchased from the Defendant both tested positive for the presence of cocaine and were sent to the TBI for testing. Norman testified that, in the course of her work with the TBI as a forensic drug chemist, she tested both substances and confirmed that they contained cocaine. The total weight of the substance containing the crack cocaine was 1.3 grams, and the total weight of the powder containing cocaine was 1.1 grams.

The Defendant makes two arguments in support of his claim that the evidence was insufficient to support his convictions. First, he asserts that the evidence was insufficient because Norman was "unable to testify how much cocaine was contained within the substances, let alone what types of precursors, cutting agents, or other substances that were present." As already stated herein, the weight of "any substance containing cocaine" pursuant to Tennessee Code Annotated section 39-17-417(c)(1) includes the weight of the cutting agents, and nothing in that statute requires the State to prove the relative amount of pure cocaine present in the substance. Indeed, "[w]hile the state was unable to prove the actual percentage of cocaine contained within the substance, this court has previously held that 'a substance containing cocaine' would include the weight of any 'cutting agent or medium along with the weight of the scheduled substance." State v. Kenny Melton, No. E2002-00581-CCA-R3-CD, 2003 WL 1737910, at *2 (Tenn. Crim. App. 2003) (quoting Alcorn, 741 S.W.2d at 138).

Second, the Defendant asserts that Norman "weighed the second set of samples (three baggies of off white powder) with the baggies" and that, therefore, the Defendant did not

"have a fair and proper weight presented to the jury." Norman testified that she received "three clear plastic corner bags, the corners of a plastic bag, and each of these were tied. And inside each one was an off-white powder." She testified that she analyzed "each bag separately" and "concluded that the powder contained cocaine." She took "individual weights" of each bag "that [she] recorded as a total of 1.1 grams." When the State asked Norman what was the substance weighing 1.1 grams, she confirmed that it was cocaine. Nothing in Norman's testimony shows, as the Defendant asserts, that the 1.1 grams of cocaine included the weight of the baggies, and the Defendant does not point to anywhere in the record in support of this assertion.

The evidence was clearly sufficient to lead a reasonable trier of fact to conclude that the Defendant was twice guilty of the sale and delivery of .5 grams or more of a substance containing cocaine within 1,000 feet of a public park. Therefore, the Defendant has failed to demonstrate that the evidence was insufficient to support his convictions. Accordingly, the Defendant is entitled to no relief on this basis.

## CONCLUSION

For the reasons set forth above, we affirm the judgments of the trial court.

_____
JEFFREY S. BIVINS, JUDGE