# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 15, 2014

## STATE OF TENNESSEE v. JUSTIN EVAN DAVIS

**Appeal from the Circuit Court for Marshall County**
**Nos. 12CR157, 12CR158   Robert G. Crigler, Judge**

---

**No.  M2013-01477-CCA-R3-CD - Filed April 7, 2014**

---

The Defendant, Justin Evan Davis, was found guilty by a Marshall County Circuit Court jury of selling and delivering one-half gram or more of cocaine, Class B felonies, in case number 12CR157 and in case number 12CR158.  *See* T.C.A. § 39-17-417 (2010).  The trial court merged the respective convictions in each indictment and sentenced him as a Range I, standard offender to concurrent terms of twelve years' confinement.  The Defendant's twelve-year sentence in 12CR157 was ordered to be served consecutively to convictions in two unrelated cases.  On appeal, he contends that the evidence is insufficient to support his convictions.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Cicruit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Michael Auffinger (on appeal and at trial) and Robert Dalton (at trial), Lewisburg, Tennessee, for the appellant, Justin Evan Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin E.D. Smith, Assistant Attorney General; Robert Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the trial, Rita Davis testified that she was a confidential informant in the Defendant's cases.  She said that her nickname was Boo, that she was not related to the Defendant, and that she had known him for a while.  She said that on April 12, 2011, she met drug task force officers to discuss her purchasing cocaine from the Defendant, whom she knew as Playa.  She said the officers searched her and her car for drugs and money before

she met the Defendant. She said that the officers had her call the Defendant to schedule a meeting to purchase cocaine and that the call was recorded. She told the Defendant she wanted an "eight-ball" of crack cocaine, but the Defendant only had powder cocaine. The Defendant told her the price was $65. They discussed how she could sell the drugs and how much money she could make. She and the Defendant agreed to meet at apartments near a food store. The drug task force officers provided her $70 before she met the Defendant and placed a recording device in a pack of cigarettes.

Ms. Davis testified that she drove to meet the Defendant after she left the drug task force officers and that the officers followed her to the meeting place. She said the Defendant called her before she arrived to determine where she was. She said that the Defendant was sitting inside his car when she arrived and that he got into the front passenger seat of her car. She said they discussed a "whammy," which was the price of "lines of cocaine." She wanted to know how to increase the profit from selling the cocaine she was buying, and the Defendant told her how to lay out the lines to maximize her profit. She gave him the cash, and the Defendant gave her the drugs and $5 change. She said the Defendant left her car, got into his car, and left.

Ms. Davis testified that after the transaction was completed, the drug task force officers followed her to the same location she met them previously. She gave the $5, drugs, and recording device to the officers. She said the officers searched her and her car again and found no drugs or cash.

Ms. Davis identified the audio recordings of the telephone call and the transaction and the video recording of the transaction. The recordings were received as an exhibit and played for the jury. In the telephone call, Ms. Davis told the Defendant that she wanted one gram of crack cocaine, but the Defendant only had powder cocaine. She asked if one gram of powder cocaine was the same as one gram of crack cocaine. The Defendant said it was the same. She asked how much one gram of the powder would cost, and the Defendant told her $65. They discussed how she should sell the cocaine. The Defendant told her she could make "five good lines" from the cocaine and sell each line for $20. They agreed to meet.

The audio recording of the transaction reflects that the Defendant got into Ms. Davis's car. They discussed how to sell the cocaine and the number of lines she could make from one gram. The Defendant told her the profit depended upon the number of lines she made and how much she charged for each line. They discussed "cutting down" the cocaine for a man who wanted to buy it from Ms. Davis and administer it intravenously. She told the Defendant she would call him if the man wanted more. The Defendant left the car.

In the video recording, Ms. Davis parked her car in a parking space next to another car. A man left the car beside Ms. Davis's car and got into her car. He sat inside the car for a few minutes, left Ms. Davis's car, entered the car parked beside Ms. Davis's car, and drove away.

Ms. Davis testified that on April 14, 2011, she made a second controlled purchase of cocaine from the Defendant. She said she met with the drug task force officers at the same location she met them on April 12. She said that she contacted the Defendant before meeting with the officers and that the officers had her call the Defendant. She and the Defendant discussed the purchase price and the meeting place. She told the Defendant that she wanted to purchase one gram of cocaine. She said the Defendant did not have that much but was willing to sell her "slightly less" than one gram for $55. She said they agreed to meet at Pizza Hut.

Ms. Davis testified that the officers searched her and her car, gave her $55, and placed a recording device on her. She said that she drove directly to the meeting place and that the officers followed her. She said the Defendant was inside his car when she arrived. She said that the Defendant got into her car, that she gave him the cash, and that he gave her the drugs. She said an unknown passenger was inside the Defendant's car. She said the Defendant left in his car. She said that she returned to the location where she met the task force officers before the transaction and that the officers followed her from Pizza Hut. She said that she gave the drugs and the recording device to the officers and that the officers searched her and her car again.

Ms. Davis identified the recordings of the telephone calls and the transaction on April 14, 2011, which were played for the jury. In the first call, Ms. Davis told the Defendant that the man to whom she sold the cocaine wanted more. They discussed a whammy. The Defendant was not sure how much cocaine he had and wanted to weigh it. He told her he would call her back after he weighed it. In the second call, the Defendant said that he had "almost a good whammy" and that the price was $60. They agreed to meet. In the audio recording of the transaction, a man entered Ms. Davis's car. They discussed the Defendant's getting two or three more whammys. A few minutes later, the man left the car. Ms. Davis described the Defendant's car and read the license plate number.

On cross-examination, Ms. Davis testified that the white powder she purchased on April 12, 2011, weighed about one gram. She agreed the Defendant mentioned baking soda during the transaction. She said baking soda was used to cook or cut the cocaine, which produced more product for sale. She said the cocaine was wrapped in cellophane. She did not know how long the police searched her car before the transaction.

Ms. Davis testified that she had previous convictions for drug-related offenses, aggravated burglary, forgery, and theft and that she was in police custody for violating her parole. She agreed she had pending charges for selling and delivering cocaine. When asked if she performed a controlled purchase with the drug task force targeting her son, she said that her son never placed drugs in her hand. She said she began working as a confidential informant in April 2011. She agreed she participated in a controlled purchase in which she kept a portion of drugs.

Lewisburg Police Officer Brad Martin testified that he was an agent with the drug task force. Regarding the April 12, 2011 transaction, he, Officer Shane George, and Assistant Director Tim Miller met Ms. Davis at an industrial park. He said Assistant Director Miller was in charge of recording Ms. Davis and the Defendant's telephone call. He provided Ms. Davis with the money used to purchase the drugs and placed the recording device on her. He searched Ms. Davis and her car before giving her $70 and after she returned from the transaction.

Officer Martin testified that he followed Ms. Davis to the location of the transaction and that she drove there without stopping. He said Officer George followed Ms. Davis in a separate car. He said Ms. Davis drove to Maple Grove Apartments near Hometown Grocery, formerly known as Harber's Grocery. He and Officer George communicated throughout the transaction. He said that after the transaction, Officer George followed Ms. Davis to the location where they had been before the transaction. He followed Officer George. He said Ms. Davis gave him the recording device and a substance he believed to be cocaine. He gave the substance to Drug Task Force Director Tim Lane, who submitted it to the Tennessee Bureau of Investigation (TBI) for analysis.

Drug Task Force Assistant Director Tim Miller testified that he was involved in the April 12 and April 14, 2011 transactions. Regarding the April 12 transaction, he said Ms. Davis acted as a confidential informant, although he could not recall if he contacted her about the Defendant or if she contacted him. He said Ms. Davis had contacted the Defendant before meeting him, Officer Shane George, and Officer Brad Martin. He said that after they met, Ms. Davis called the Defendant and arranged a purchase. He looked at Ms. Davis's cell phone to learn the number she called and noted that she called the same telephone number on April 12 and April 14. He agreed the conversation was recorded.

Assistant Director Miller testified that in the April 12, 2011 telephone call, Ms. Davis told the Defendant she wanted one gram of cocaine and that the Defendant told her the price was $65. He agreed Officer Martin searched Ms. Davis and her car before giving her $70 and placed a recording device on her. He went to the location of the transaction and video recorded the scene. He said he was about twenty yards from Ms. Davis's car. He said the

Defendant got out of a car and entered Ms. Davis's car on the passenger side. He said the Defendant remained inside Ms. Davis's car for about two minutes and left. He said Ms. Davis left after the Defendant. He returned to his car and returned to the meeting place.

Assistant Director Miller testified that on April 14, 2011, he, Officer Shane George, and Agent Shane Daugherty met Ms. Davis for the purpose of purchasing cocaine from the Defendant. He said Lewisburg Police Officers David Henley and James Johnson were also there. He said that when Ms. Davis called the Defendant, a question arose regarding the amount of cocaine the Defendant had for sale and that the Defendant told Ms. Davis he would determine the amount and call her back. He said the Defendant called Ms. Davis's cell phone and told her the price and the amount he had for sale. He said that although Ms. Davis wanted one gram of cocaine, the Defendant had just under one gram. The telephone calls were recorded. He searched Ms. Davis and her car before giving her money for the transaction and placed a recording device on her. He also searched Ms. Davis and her car after the transaction.

Assistant Director Miller testified that his and Officer George's responsibility was to follow Ms. Davis to and from the location of the transaction. He said that he and Officer Henley traveled in the same car behind Ms. Davis and that they never lost sight of her. He saw a 1960s blue car drive to the transaction location. He saw two African-American men inside the car, although he could not identify them. He obtained the license plate number and confirmed the car was registered to Darlene Mayes, the Defendant's mother.

Assistant Director Miller testified that after the transaction, Ms. Davis gave him a substance he believed to be cocaine. He later gave the substance to Director Tim Lane, who usually took evidence to the TBI laboratory for analysis.

On cross-examination, Assistant Director Miller testified regarding the April 12, 2011 transaction that he did not conduct any searches of Ms. Davis, provide her money, or collect any substances from her. He denied witnessing the April 14 transaction and said he was not close enough to the older-model car to identify the two men inside.

Shelbyville Police Officer Shane George testified that he participated in the April 12 and April 14, 2011 transactions. Regarding the April 12 transaction, he said his task was to follow Ms. Davis to and from the transaction location and to monitor the recording device on her. He said Ms. Davis did not have contact with anyone while driving to and from the location of the transaction. He said that after the transaction was completed, he took the recording device from Ms. Davis.

Officer George testified that during the April 14, 2011 transaction, he followed Ms. Davis to and from the location of the transaction. He said he was not close enough to identify anyone during the transaction but remained in radio contact with the agents who were. He said he never lost sight of Ms. Davis to and from the transaction location.

Drug Task Force Director Tim Lane testified that he delivered the substances seized on April 12 and April 14, 2011, to the TBI for analysis. TBI Agent Cassandra Beavers, an expert in forensic chemistry, testified that she analyzed the substance seized on April 12, 2011. She stated that she weighed the substance after removing it from the packaging and that she used "top-loading digital balances," which were the most accurate scales in the scientific community. She said the white powder substance weighed 0.88 gram. Her analysis showed the substance was powder cocaine.

On cross-examination, Agent Beavers testified that the two analyses she performed on the cocaine were "confirmatory tests," which confirmed the structure and identity of the substance. She only used a small portion of the substance during the analyses. She said the spectrum produced in her analyses showed other compounds present in the substance. She said that any cutting agent contained in a substance would be revealed in the testing but that no cutting agent was prominent. She agreed, though, she could only conclude that the powdery substance contained cocaine.

When asked why she said previously the substance contained cocaine, Agent Beavers testified that the law only required a mixture containing a controlled substance. She did not determine the percentage of cocaine contained in the substance and said quantitative analysis was only performed at the district attorney's request and was not requested in this case.

Agent Beavers testified that if a substance containing cocaine was heavily "cut" with another compound, the qualitative analyses she performed would identify the substance as the cutting agent and might not show the presence of cocaine. She said her job was not to determine the amount of cocaine in the substance but to determine if cocaine was present.

On redirect examination, Agent Beavers testified that she was asked to determine whether a controlled substance was present and that she performed the appropriate analyses to make a conclusion. She said that she performed about 900 similar analyses in 2011 and that she received no requests to perform quantitative analyses. She said state law required her to determine whether a substance contained "any mixture or preparation or compound made from the cocoa leaves." She said the law did not require her to determine the percentage of cocaine within a substance.

TBI Agent Donna Jacobson, an expert in forensic chemistry, testified that she analyzed the substance seized on April 14, 2011. She said the white powder substance weighed 0.58 grams. She analyzed the substance and concluded that it contained cocaine. On cross-examination, Agent Jacobson testified that it was not standard procedure to perform quantitative analyses and that she did not perform any in this case. She said quantitative analyses to determine the amount of a compound contained in a substance was time consuming and required the comparison to "known standards to determine the percent purity."

Upon this evidence, the Defendant was convicted of selling and delivering one-half gram or more of cocaine in case number 12CR157 and in case number 12CR158. The trial court merged the convictions in each indictment and sentenced the Defendant as a Range I, standard offender to concurrent terms of twelve years' confinement. This appeal followed.

The Defendant contends that the evidence is insufficient to support his convictions. He argues that the State failed to prove beyond a reasonable doubt that the weight of the cocaine was one-half gram or more. The State responds that the evidence is sufficient. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not reweigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005) (quoting *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998)). Circumstantial evidence alone may be sufficient to support a conviction. *State v. Richmond*, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999); *State v. Buttrey*, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). The standard of proof is the same, whether the evidence is direct or circumstantial. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Id.* (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4). The manufacture, delivery, or sale of cocaine is a Class B felony "if the amount involved is point five (.5) grams or more[.]" T.C.A. § 39-17-417(c)(1).

The Defendant does not dispute that the State proved beyond a reasonable doubt that on April 12 and April 14, 2011, he sold and delivered a substance containing cocaine to Ms. Davis. He argues, though, that the State failed to prove he sold one-half gram or more of cocaine to Ms. Davis. He claims that his comments in the recordings show that the substances had to be "cooked down" before using it intravenously, which would have reduced the weight of the substances containing the cocaine. He claims no evidence supports a finding that the substances sold to Ms. Davis were consumable at the time of the sales. Likewise, he argues that the State's experts could not determine the amount of cocaine contained in the substances analyzed. The State argues that the expert testimony sufficiently established the weight of the cocaine and excluded the significant presence of other substances. We conclude the evidence is sufficient.

In support of his argument, the Defendant relies on *State v. Magness*, 165 S.W.3d 300 (Tenn. Crim. App. 2004). We conclude that his reliance is misplaced. In *Magness*, the defendant was convicted of manufacturing methamphetamine. The methamphetamine substance contained brake cleaner, a non-consumable product. *Id.* at 301. This court concluded that the brake cleaner was erroneously included in the weight of the methamphetamine substance because it was neither marketable nor consumable. *Id*. at 307. In the present case, although the Defendant told Ms. Davis how to "cook down" the cocaine to the form required for the intended method of administration, no evidence was presented that the cocaine contained non-marketable or non-consumable substances.

In *State v. David Sever Watkins*, No. M2003-01488-CCA-R3-CD (Tenn. Crim. App. Feb. 9, 2005), *perm. app. denied* (Tenn. June 27, 2005), the defendant raised the same issue the Defendant raises now regarding his conviction for selling one-half gram or more of cocaine. This court concluded that for a conviction under Code section 39-17-417(a)(4), the State was only required to prove beyond a reasonable doubt that the weight of the substance containing the cocaine was one-half gram or more. *David Sever Watkins*, slip op. at 4. This court also concluded that the State was not required to show that the "pure cocaine" contained in the substance, without regard to other compounds in the substance, weighed one-half gram or more. *Id.*

Likewise, in *State v. Howard Kareem Atkins*, No. 02C01-9805-CC-00155 (Tenn. Crim. App. Apr. 26, 1999), the defendant raised the same issue regarding his conviction for selling one-half gram or more of cocaine. As in the present case, the defendant framed the

issue as one relating to the sufficiency of the evidence. This court concluded that the weight of the cocaine in the substance was not a sufficiency issue because the State only needed to prove beyond a reasonable doubt that the "weight of the cocaine combined with the other substances totaled .5 grams or more." *Howard Kareem Atkins*, slip op. at 3 (citing *State v. Alcorn*, 741 S.W.2d 135, 138 (Tenn. Crim. App. 1987)).

The Defendant concedes that he sold and delivered substances containing cocaine to Ms. Davis on April 12 and April 14, 2011, and the recordings and witness testimony support his concession. Agent Beavers's expert testimony shows that the substance sold to Ms. Davis on April 12, 2011, contained cocaine and weighed 0.88 gram. Agent Jacobson's expert testimony shows that the substance sold to Ms. Davis on April 14, 2011, contained cocaine and weighed 0.58 gram. The evidence is sufficient, and the Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE